# DECISIONS

OF THE

## SUPREME JUDICIAL COURT

OF

## MASSACHUSETTS

---

**ATLANTICARE MEDICAL CENTER & others[1] vs.
COMMISSIONER OF THE DIVISION OF MEDICAL
ASSISTANCE.**

Suffolk. December 2, 2002. - March 20, 2003.

Present: MARSHALL, C.J., GREANEY, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Medicaid. Public Welfare,* Medical assistance benefits. *Regulation. Division of
Medical Assistance. Administrative Law,* Judicial review, Regulations,
Agency's interpretation of statute. *Statute,* Construction. *Hospital,* Medicaid
reimbursement. *Medicare.*

In cases in which six hospitals properly complied with 130 Code Mass. Regs.
§ 450.316(E) (1998) (reimbursement regulation), promulgated by the divi-
sion of medical assistance, the Commonwealth's administrator of its
Medicaid program, by making "diligent efforts" to identify liable third
parties before billing the division, but in which third-party insurers were
identified after the division had paid the hospitals, the division did not

---

[1]Salem Hospital, Lawrence General Hospital, Hale Hospital, Beverly
Hospital, and Deaconess Waltham Hospital.

2                                          439 Mass. 1 (2003)

Atlanticare Medical Center *v.* Commissioner of the Division of Medical Assistance.

have the authority to enforce its reimbursement regulation by requiring the hospitals to return payments to the division and to rebill the liable third parties, which enforcement would have been inconsistent with 42 U.S.C. § 1396a(a)(25)(B), requiring the division to recover directly from the liable third parties. [5-15]

CIVIL ACTION commenced in the Superior Court Department on April 6, 2000.

The case was heard by *Patrick J. King*, J., on motions for judgment on the pleadings.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Peter V. Kent* (*Charlene E. Kent* with him) for the plaintiffs.

*John E. Bowman, Jr.*, Assistant Attorney General, for the defendant.

MARSHALL, C.J. At issue in this case is whether the division of medical assistance (division), the Commonwealth's administrator of its Medicaid program, has the authority to enforce its reimbursement regulation, 130 Code Mass. Regs. § 450.316(E) (1998) (reimbursement regulation), which requires that healthcare providers return payment to the division in the event that a liable third party is identified after the division has paid the provider for services.[2] At issue are only those cases where the healthcare provider properly complied with the division's due diligence regulation, which requires a provider to make "diligent efforts" to obtain payment from third-party "resources" before it seeks Medicaid payments from the division, see 130 Code Mass. Regs. § 450.316, first par. (1998) (due diligence regulation),[3] but a potential third-party insurer was later identified. For reasons detailed below, we conclude that the division does not have such authority.

---

[2]Title 130 Code Mass. Regs. § 450.316(E) provides, in pertinent part, that "[i]f a third-party resource is identified after the provider has already billed and received payment from the [d]ivision, the provider must return any payment it received from the [d]ivision. The provider must bill all third-party resources before resubmitting a claim to the [d]ivision."

[3]Title 130 Code Mass. Regs. § 450.316, first par. (1998), provides, in pertinent part, that "all providers must make diligent efforts to obtain payment first from other resources . . . . The [d]ivision will not pay a provider and will recover any payments to a provider if it determines that the provider has not made such diligent efforts."

The plaintiffs, a group of six hospitals (hospitals), brought an action in the Superior Court against the division seeking judicial review under G. L. c. 30A, § 14, of substantially similar administrative decisions by the division's acting commissioner, which ordered the hospitals to return monies to the division pursuant to its reimbursement regulation, 130 Code Mass. Regs. § 450.316(E).[4] The hospitals also sought a declaration to the effect that 130 Code Mass. Regs. § 450.316(E) was unlawful as inconsistent with 42 U.S.C. § 1396a(a)(25)(B) (2000).[5] See G. L. c. 30A, § 7. The parties filed cross motions for judgment on the pleadings. A judge in the Superior Court entered a judgment annulling the administrative decisions and declaring the reimbursement regulation to be inconsistent with the Federal statute and thereby unlawful. The commissioner filed a timely notice of appeal. We transferred the case from the Appeals Court on our own motion.

1. *Background.* "Medical assistance is a cooperative Federal and State program which provides payment for medical services to eligible individuals and families." *Haley* v. *Commissioner of Pub. Welfare,* 394 Mass. 466, 467 (1985). Federal funds are provided to participating States, conditioned on the State's compliance with various statutory requirements. See 42 U.S.C. §§ 1396a et seq. (2000). One such set of requirements pertains to the recovery of funds from liable third parties. See 42 U.S.C. § 1396a(a)(25). The State or local agency must "take all reasonable measures to ascertain the legal liability of third parties (including health insurers . . .) to pay for care and services available under the plan." See 42 U.S.C. § 1396a(a)(25)(A). Reasonable measures include "the collection of sufficient information . . . to enable the State to pursue claims against such third parties," 42 U.S.C. § 1396a(a)(25)(A)(i), and the development of a plan for pursuing such claims. See 42 U.S.C.

---

[4]The hospitals, each represented by the same legal counsel, consolidated their three separate appeals into a single complaint before the Superior Court.

[5]Title 42 U.S.C. § 1396a(a)(25)(B) (2000) provides, in pertinent part, that, "in any case where [third-party] legal liability is found to exist after medical assistance has been made available on behalf of the individual and where the amount of reimbursement the State can reasonably expect to recover exceeds the costs of such recovery, the State or local agency will seek reimbursement for such assistance to the extent of such legal liability."

§ 1396a(a)(25)(A)(ii). Where the State or local agency pays for services and later discovers a liable third party, the State or local agency must seek reimbursement, provided it is cost effective to do so. 42 U.S.C. § 1396a(a)(25)(B).

Massachusetts, as a Medicaid participant, has established a Medicaid program to conform with the Federal statutory scheme. See *Haley* v. *Commissioner of Pub. Welfare, supra* at 472 ("the Legislature intended the . . . benefits program to comply with the Federal statutory and regulatory scheme"). See also G. L. c. 118E, § 9 (establishing Medicaid program "pursuant to and in conformity with" Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 et seq.). The division administers the program, see G. L. c. 118E, § 1, and is "authoriz[ed] to promulgate regulations which give effect to legislative mandates" (citations omitted). *Thomas* v. *Commissioner of the Div. of Med. Assistance,* 425 Mass. 738, 746 (1997). See G. L. c. 118E, §§ 7 and 12. Exercising this power, the division promulgated 130 Code Mass. Regs. § 450.316(E), its reimbursement regulation. See note 3, *supra.* This regulation applies where, although the provider has made the required "diligent effort" to identify liable third parties before billing the division, a third-party insurer is identified after the division has paid the provider. Compare 130 Code Mass. Regs. § 450.316, first par., with 130 Code Mass. Regs. § 450.316(E). In such a case, the regulation requires the healthcare provider to return to the division payments made to the provider under the Medicaid program.[6]

In 1998, the division sought to enforce the reimbursement regulation with respect to the six plaintiff hospitals. The material facts prompting the division's action are undisputed. In the three years prior to the division's enforcement action, each

---

[6]Where the provider has not made the required "diligent efforts" to identify a liable third-party insurer prior to billing the division, the division may decline payment or, if payment has already been made, recover that payment pursuant to its due diligence regulation. See 130 Code Mass. Regs. § 450.316, first par. See also G. L. c. 118E, § 23, fourth par. ("The division is the payor of last resort, and accordingly a provider shall request payment for medical care or services it provides from a health insurer which is or may be liable for the medical care or services so provided, before payment is requested from the division").

439 Mass. 1 (2003)                                                      5

Atlanticare Medical Center v. Commissioner of the Division of Medical Assistance.

hospital had provided medical services to individuals deemed eligible for Medicaid benefits. It is undisputed that, in all but two instances not at issue here, the hospitals made diligent efforts to identify liable third-party insurers, in conformity with the division's due diligence regulation. When the hospitals were unable to identify liable third-party insurers, they sought and received payment from the division. Subsequently, in 1998, the division informed the hospitals that it had identified third parties responsible for the claims, and, pursuant to the reimbursement regulation, ordered the hospitals to return the Medicaid payments to the division and to rebill the liable third parties. In some instances, Medicare was the newly discovered third party; the patients serviced by the hospitals in those instances had become retroactively eligible for Medicare benefits. In those instances, no amount of "diligent efforts" by the healthcare providers would have identified a liable third-party insurer — Medicare — as Medicare provided the insurance coverage retroactively, i.e., only after the healthcare services had been provided. The remaining instances involved private insurers. The hospitals unsuccessfully appealed from the recovery orders to the commissioner. On appeal, a judge in the Superior Court annulled the decisions. Construing 42 U.S.C. § 1396a (a)(25)(B), the judge concluded that the Federal statute mandated that an administrating agency, such as the division, itself seek reimbursement directly from liable third parties, and that the division's reimbursement regulation was inconsistent with that directive. The judge declared the regulation unlawful to the extent that it required the hospitals to return payments to the division and rebill liable third parties. The commissioner appeals from this decision. We affirm.

2. *Discussion.* Our review of an administrative action is "limited to a determination whether the State action is arbitrary, capricious, or contrary to law." *Tarin* v. *Commissioner of the Div. of Med. Assistance*, 424 Mass. 743, 750 (1997), quoting *Massachusetts Hosp. Ass'n* v. *Department of Pub. Welfare*, 419 Mass. 644, 652 (1995). We will declare an agency regulation void if "its provisions cannot by any reasonable construction be interpreted in harmony with the legislative mandate." *Thomas* v. *Commissioner of the Div. of Med. Assistance, supra* at 746,

quoting *American Family Life Assur. Co.* v. *Commissioner of Ins.*, 388 Mass. 468, 477, cert. denied, 464 U.S. 850 (1983). The division argues that the reimbursement regulation, 130 Code Mass. Regs. § 450.316(E), is consistent with 42 U.S.C. § 1396a(a)(25)(B), which the division contends permits, if not directs, a State or local agency administering the Medicaid program to seek reimbursement from providers. Accordingly, the division argues that the Superior Court judge erred in concluding that the division lacked the authority to implement the regulation. On the other hand, the hospitals, in conformity with the judge's decision, maintain that 42 U.S.C. § 1396a (a)(25)(B) requires the division to recover directly from the liable third party. We first consider, therefore, the meaning of the Federal statute.

We exercise de novo review over questions of statutory construction. *Raytheon Co.* v. *Director of the Div. of Employment Sec.*, 364 Mass. 593, 595 (1974). Although we generally defer to an agency's interpretation of a statute that it is charged with administering, an "incorrect interpretation of a statute . . . is not entitled to deference." *Massachusetts Hosp. Ass'n* v. *Department of Med. Sec.*, 412 Mass. 340, 345-346 (1992), quoting *Kszepka's Case*, 408 Mass. 843, 847 (1990). In discerning a statute's meaning, "[w]e interpret the words used in a statute with regard to both their literal meaning and the purpose and history of the statute within which they appear." *Massachusetts Hosp. Ass'n* v. *Department of Med. Sec.*, *supra* at 346. Applying this rule, we first consider the plain language of 42 U.S.C. § 1396a(a)(25)(B). See note 5, *supra*.

The natural reading of the text of § 1396a(a)(25)(B) is that the State or local agency must seek reimbursement *from a liable third party*, provided it is cost effective to do so. See, e.g., *Wesley Health Care Ctr., Inc.* v. *DeBuono*, 244 F.3d 280, 281 (2d Cir. 2001) (§ 1396a[a][25][B] requires that, "[i]f third party liability is discovered after medical care has been provided, the [S]tate agency must seek reimbursement *from the third party*" [emphasis added]). The statute clearly designates the "State or local agency" as the entity responsible for collecting the reimbursement. Furthermore, the several references in the statute to "third parties" and the absence of a single reference to health-

care providers suggests that third parties are the ones responsible for making the reimbursement.[7] The division, however, disputes this interpretation and, instead, advances alternatives that would include providers in the group of potential recovery sources.[8] We reject such an interpretation because it would render largely superfluous the language in § 1396a(a)(25)(B) that limits the circumstances in which the State should seek reimbursement to those in which "the amount of reimbursement the State can reasonably expect to recover exceeds the costs of such recovery." 42 U.S.C. § 1396a(a)(25)(B). See 42 C.F.R. § 433.139(d)(3), (f)(1), and (f)(2) (2000) (directing administering agency to seek recovery where cost effective). Although we recognize that there may be de minimis costs associated with pursuing recovery from the provider, such as the cost of sending a recovery letter or of hiring a contractor to perform the recovery work, realistically, there are few instances in which the cost of such recovery would exceed the amount of the recovery.[9,10]

While the statutory language tends to support the hospitals'

[7]The term "[t]hird party" is defined in the Federal regulations as "any individual, entity or program that is or may be liable to pay all or part of the expenditures for medical assistance furnished under a State plan." 42 C.F.R. § 433.136 (2000). The parties do not dispute that both Medicare and private insurers are considered "third parties" within the meaning of the statute.

[8]Specifically, the division suggests that the term "reimbursement," which means "repayment" or "indemnification," Black's Law Dictionary 1290 (7th ed. 1999), *directs* the State or local agency to seek reimbursement from the original payee (i.e., the provider) or that, at a minimum, the statute leaves to the State or administering agency the discretion to determine whether to pursue reimbursement from providers or from liable third parties.

[9]We are also persuaded by the hospitals' argument that the division's interpretation of the statute would render largely meaningless the Federal regulation requiring States or local agencies to obtain an assignment of benefits from recipients. See 42 C.F.R. § 433.146(b)(1). The apparent purpose of this assignment regulation is to ensure that the State or local agency has standing to pursue reimbursement directly from liable third parties. See *id.* Under the division's proposed interpretations, there would be little purpose in such an assignment.

[10]The judge also concluded that the language "to the extent of such legal liability" effectively excluded the hospitals from the group of potential recovery sources because the hospitals did not have a "legal liability." The division disputes this conclusion, referring to the provider agreements, the Medicaid statute, and corresponding regulations. The division suggests that this language effectively prevents the division from recovering more from the provider than

position, the legislative history confirms it. The original version of § 1396a(a)(25)(B) was added to the Social Security Act in 1968, see Social Security Amendments of 1967, Pub. L. No. 90-248, Title II, § 229, to ensure that where "medical assistance is granted and legal liability of a third party is established later, the State or local agency must seek reimbursement *from such party*" (emphasis added). S. Rep. No. 744 at 3022 (1967).[11] In 1986, Congress expanded § 1396a(a)(25) in ways not relevant here. Although at that time Congress made no substantive change to subparagraph (B), Congress reiterated that subparagraph (B) "requires the State plan to provide that . . . the agency will seek reimbursement *from liable third parties* where payment has already been made where the expected amount of recovery exceeds the cost of recovery" (emphasis added). H.R. Conf. Rep. No. 99-453, 99th Cong., 1st Sess. 542 (1985). There is no doubt that Congress intended that the State or local agency (here the division) responsible for seeking reimbursement under subparagraph (B) would do so from a liable third party.

Our interpretation of § 1396a(a)(25)(B) is also informed by the corresponding Federal regulations. See 42 C.F.R. § 433.139. Subparagraphs (d)(1) and (d)(2) identify the two scenarios under which recovery of reimbursement must be sought: (1) where the agency "has an approved waiver under paragraph (e) of this section to pay a claim in which the probable existence of third party liability has been established and then seek reimbursement . . . from the third party"; and (2) where the agency "learns of the existence of a liable third party after a claim is paid, or benefits become available from a third party after a claim is paid." Subparagraph (d)(3) states that "[r]eimbursement must be sought unless the agency determines that recovery would not be cost effective in accordance with paragraph (f) of this

---

it initially paid or than the hospital can obtain from the third party. We assume for purposes of our analysis that the division is correct.

[11]At the time, subparagraph (B) was designated as subparagraph (C). The language was identical to that now found in subparagraph (B), except for the phrase "and where the amount of reimbursement the State can reasonably expect to recover exceeds the costs of such recovery," which was added in 1981. See Pub. L. No. 97-35, Title XXI, § 2182, 95 Stat. at 814-816, 97th Cong., 1st Sess. (1981). In 1986, Congress recodified former subparagraph (C) as subparagraph (B). See Pub. L. No. 99-272, Title IX, § 9503(a)(1), 100 Stat. at 202, 99th Cong., 2d Sess. (1986).

section." 42 C.F.R. § 433.139(d)(3). Subparagraph (f)(1), in turn, provides that "[a]n agency must seek reimbursement *from a liable third party* on all claims for which it determines that the amount it reasonably expects to recover will be greater than the cost of recovery" (emphasis added). Similarly, subsection (f)(2) provides that "[t]he State plan must specify the threshold amount or other guideline that the agency uses in determining whether to seek recovery or reimbursement *from a liable third party*, or describe the process by which the agency determines that seeking recovery of reimbursement would not be cost effective" (emphasis added). These regulations plainly convey that the agency should seek reimbursement directly from the liable third party.

Our interpretation of § 1396a(a)(25)(B) is also consistent with the policy set forth in the Health Care Financing Administration's (HCFA's) State Medicaid manual.[12] The applicable section provides:

"Recovery. [States must s]eek reimbursement *from third parties* whenever [States] have paid claims for which there are third parties that are liable for payment of the claims. This is referred to as the 'pay and chase' method. Reimbursement must be sought unless it is determined that recovery of reimbursement would not be cost effective in accordance with threshold amounts that have been established. . . . If the probable existence of [third-party liability] cannot be established or third party benefits are not available to pay the recipient's medical expenses at the time the claim is filed, [States must] pay the full amount allowed under [the] payment schedule. *If [States] learn of the existence of a third party after [they] have paid the claims, or benefits become available from the third party*

---

[12]We disagree with the division's contention that the Superior Court judge improperly relied on the Health Care Financing Administration (HCFA) manual. The judge merely acknowledged that the manual was consistent with his interpretation. Compare *Thomas* v. *Commissioner of the Div. of Med. Assistance*, 425 Mass. 738, 748 (1997) (proper to discuss HCFA bulletin where opinion expressed therein was "consistent" with statutory interpretation adopted), with *Haley* v. *Commissioner of Pub. Welfare*, 394 Mass. 466, 474 (1985) (improper to rely on HCFA action transmittal because it was "unpersuasive, especially where the interpretation result[ed] in a change from prior practice").

*after the claim is paid, [States must] seek recovery of reimbursement from the third party* to the limit of legal liability within [sixty] days from the end of the month in which [they] learn of the existence of a third party or benefits become available, whichever is later" (emphasis added).

HCFA State Medicaid Manual § 3904.3 (1990). The division contends that, while the "pay and chase" method accurately represents an agency's responsibilities where the agency recovers for prenatal or preventive pediatric care or for child support, see 42 U.S.C. § 1396a(a)(25)(E) and (F), where the agency recovers against estates or tort feasors, see, e.g., *Cohen* v. *Commissioner of the Div. of Med. Assistance*, 423 Mass. 399 (1996), or where the agency has a waiver pursuant to 42 C.F.R. § 433.139(d)(1), the method does not apply where the agency seeks recovery pursuant to § 1396a(a)(25)(B). We see no reason so to limit the language in this section of the manual.

The division argues that the Superior Court judge "misconstrued the statute's structure" by incorrectly reading into subparagraph (B) the third-party limitation specified in subparagraphs (E) and (F). Compare 42 U.S.C. § 1396a (a)(25)(B) with 42 U.S.C. § 1396a(a)(25)(E) and (F). Subparagraphs (E) and (F) direct the State or local agency to pay a provider for certain types of services regardless whether there is a known third-party liability and then to "seek reimbursement from such third party in accordance with subparagraph (B)." The division argues that the phrase "from such third party" was inserted to alter the meaning of subparagraph (B), which contains no such limitation. We disagree. The term "in accordance with" conveys the idea that the procedure for seeking reimbursement from third parties is described in subparagraph (B). Moreover, it is clear that when subparagraphs (E) and (F) were added, Congress did not intend to qualify subparagraph (B), but rather to limit the scope of subparagraph (A), and the division acknowledges as much. See H.R. Conf. Rep. No. 99-453 at 544 (explaining intent of subparagraphs [E] and [F] with

no mention of an intent to alter requirement in subparagraph [B]).[13]

Our construction of § 1396a(a)(25)(B) would be entirely unremarkable were it not for the division's view, agreed to by the hospitals, that it cannot recover costs from the liable third party when that party is Medicare.[14] According to the division, this "fact" prevents the division from complying with the requirement that Medicaid be the payer of last resort. See G. L. c. 118E, § 23, fourth par. See also *Briggs* v. *Commonwealth*, 429 Mass. 241, 256 (1999) ("Medicaid is an insurer of last resort"); *Wesley Health Care Ctr., Inc.* v. *DeBuono*, 244 F.3d 280, 281 (2d Cir. 2001) (Medicaid is "payor of last resort"). We reject the division's argument because we are not persuaded that it is impossible for the division to obtain reimbursement from Medicare.

Although the parties' arguments regarding Medicaid's alleged inability to recover from Medicare are largely conclusory, their views appear to be grounded in the notion that the division does not have standing to pursue a claim against Medicare. However, to the extent that the parties have identified relevant regulations, none seems to apply to a situation in which Medicare has acknowledged a mistake in denying liability for a claim or has agreed to pay a claim retroactively. See, e.g., 42 C.F.R. § 433.146 (2000) (individual's assignment to State of rights to benefits "may not include assignment of rights to Medicare benefits"); 42 C.F.R. § 424.51 (2001) (basic rule that "Medicare pays the provider for services by a provider"). Moreover, at least two courts have resoundingly rejected the rationale underlying the division's position.

---

[13]Nor does *Wesley Health Care Ctr., Inc.* v. *DeBuono*, 244 F.3d 280, 282 (2d Cir. 2001), change our analysis. In that case, the court recognized that, under the New York regulatory scheme, a nursing home provider was obligated in some circumstances to repay funds to the Medicaid program in the event that the provider received payment from a third party after receiving Medicaid payments. Similar to the division's due diligence regulation, the regulation at issue in that case appears to have applied in circumstances where the provider knew that a liable third party might exist when it billed Medicaid. In contrast, the parties here did not know (and in some cases could not have known) that a liable third party existed when the provider billed Medicaid.

[14]At oral argument, however, both parties conceded that it might be possible for the division to recover from Medicare.

In *New York State Dep't of Social Servs.* v. *Bowen*, 846 F.2d 129 (2d Cir. 1988), the New York State Department of Social Services (NYSDSS) sought to appeal from decisions of the United States Department of Health and Human Services (HHS) denying Medicare benefits to nursing home patients, where, as a result of the denials, NYSDSS paid for the care with Medicaid funds. Among other things, HHS argued that the NYSDSS lacked standing to pursue the appeals. *Id.* at 132. The court disagreed and concluded that NYSDSS did have standing as the patients' subrogee. Although the court recognized that Federal statutes did not explicitly grant NYSDSS standing, the court gave considerable weight to the fact that Congress intended Medicaid to be the payer of last resort. *Id.* at 133. The court concluded that it was "illogical to suggest, as HHS contends, that the statutory and regulatory scheme of Medicare abrogates the principle that 'Medicaid is the payer of last resort' and renders unenforceable the Medicaid statutes requiring [S]tates to recover from all responsible third parties (including the Medicare program)." *Id.* at 134.

More factually similar to the instant case is *Michigan Dep't of Social Servs.* v. *Shalala*, 859 F. Supp. 1113 (W.D. Mich. 1994). There, the Michigan Department of Social Services (MDSS) sought reimbursement from HHS for payments that MDSS had made to healthcare providers. Relying on *New York State Dep't of Social Servs.* v. *Bowen*, *supra*, and a Michigan subrogation statute, the Federal District Court held that the MDSS had standing as the patients' assignee or subrogee to pursue reimbursement from HHS.[15] Noting that Congress had done nothing to change the statutory scheme in the six years since *New York State Dep't of Social Servs.* v. *Bowen*, *supra*, had been decided, the court concluded that "no good reason to disregard traditional subrogation principles has been offered" and thus, that MDSS had "standing via subrogation [principles] to pursue reimbursement of monies it paid under Medicaid for care for which Medicare may be primarily liable." *Michigan Dep't of Social Servs.* v. *Shalala*, *supra* at 1118.

[15]The Michigan subrogation statute, Michigan Comp. Laws Ann. § 400.106(1)(b)(ii) (West 1997), is substantially similar to G. L. c. 118E, § 23, first par.

The division has cited no case that supports the proposition that it cannot pursue reimbursement from Medicare in the circumstances of this case. Instead, the division relies on an HCFA letter, dated March 1, 1991, issued several years before *Michigan Dep't of Social Servs.* v. *Shalala, supra,* was decided, in which HCFA narrowly construes *New York State Dep't of Social Servs.* v. *Bowen, supra,* and states its general position that Medicaid cannot be recovered from Medicare. Assuming, arguendo, that this letter represents HCFA's current position, it is of no consequence that HCFA has not yet adopted the reasoning of another court to the contrary. There is also nothing in the record to suggest that the division has ever attempted to recover reimbursement from Medicare, or that it has been rebuffed in any attempts to do so.[16]

In essence, the division seeks a statutory construction that is not provided in the language of the statute, and one that is inconsistent with the unequivocal legislative history and the cognate Federal regulations, for a reason that may be hypothetical or anomalous and grounded in a legal theory that one Federal court has described as "in defiance of common sense." *New York State Dep't of Social Servs.* v. *Bowen, supra* at 134. We conclude that the better course is to refrain from such a construction of § 1396a(a)(25)(B).

We recognize that it is not impossible for providers to seek recovery from third parties. The division contends that the judge's interpretation of § 1396a(a)(25)(B) is inconsistent with established commercial practice and that, in seeking to avoid the reimbursement regulation, the hospitals aim to treat Medicaid differently from the way they treat private insurers.[17] While the practice of third-party reimbursements by private

[16]As a general matter, we see no reason why the division, through enforcement of its due diligence regulation, should not be able to ensure that Medicare pays where liable. Furthermore, the providers have every incentive to assist the division in this endeavor; not only are they subject to the division's due diligence regulation, they also receive greater monetary compensation from Medicare (and other private insurers) than they do from Medicaid.

[17]Testimony at the administrative hearings established that when a private insurer pays a hospital and subsequently discovers that a different insurer should have been held primarily liable for the claim, the insurer that paid improperly recoups its payment. There was also testimony, however, that this practice only applies where the hospital incorrectly billed the insurer.

insurers may provide limited guidance, at least in some circumstances,[18] we see nothing in the language or the legislative history of § 1396a(a)(25)(B) that would cause us to conclude that Congress intended to graft any such practice onto the Federal statute. In the absence of such an indication, we hesitate to assign the burden of recovery to the hospitals, particularly where the hospitals have exercised diligent efforts to identify third-party liability in the first instance and, through no fault of their own, liability was discovered after they were properly paid.

In sum, we conclude that the interpretation of § 1396a (a)(25)(B) proposed by the division is inconsistent with the tenor of the statutory language, with the unambiguous legislative history and with the clear meaning of the corresponding regulations, and we reject the division's suggestion that we interpret the statute to avoid what it views as problems connected with recovery from Medicare. The division has "no inherent authority to issue regulations . . . or 'promulgate rules that conflict with the statutes or exceed the authority conferred by the statutes by which the agency was created.'" *Massachusetts Hosp. Ass'n* v. *Department of Med. Sec.*, 412 Mass. 340, 342 (1992), quoting *Massachusetts Mun. Wholesale Elec. Co.* v. *Energy Facilities Siting Counsel*, 411 Mass. 183, 194 (1991). "Where there is a conflict between State and Federal regulations, the Legislature intended that the [division] comply with the Federal rule." *Cruz* v. *Commissioner of Pub. Welfare*, 395 Mass. 107, 112 (1985). Accordingly, the Superior Court judge correctly concluded that the hospitals had satisfied the elements required to obtain a declaratory judgment, see, e.g., *Villages Dev. Co.* v. *Secretary of the Executive Office of Envtl. Affairs*, 410 Mass. 100, 106 (1991), and properly entered a declaration that the division lacks the authority to implement 130 Code Mass. Regs. § 450.316(E) to the extent that the regulation, by requiring the hospitals to return payments to the

---

[18]The commercial practice may be more akin to the division's practice of seeking repayment under the due diligence regulation. At oral argument, counsel for the hospitals explained that commercial insurers tend to submit claims for recoupment to the provider at the time of claim resolution, and not years later. At the administrative hearing, testimony established that it is significantly more expensive for the hospital to repay a claim after a patient's information has been archived.

division where they have properly received payments after complying with the division's due diligence regulation, is inconsistent with 42 U.S.C. § 1396a(a)(25)(B).

*Judgment affirmed.*