# United States Court of Appeals
## For the First Circuit

No. 09-2392

COMMONWEALTH OF MASSACHUSETTS,

Plaintiff, Appellant,

v.

KATHLEEN SEBELIUS, ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Mark L. Wolf, U.S. District Judge]

Before

Lynch, Chief Judge,
Boudin and Howard, Circuit Judges.

Kenneth W. Salinger, Assistant Attorney General, Administrative Law Division, with whom Martha Coakley, Attorney General, was on brief for appellant.
Daniel Tenny, Attorney, Appellate Staff, Civil Division, Department of Justice, with whom Tony West, Assistant Attorney General, Carmen Ortiz, United States Attorney, Mark B. Stern, Attorney, Appellate Staff, Civil Division, Department of Justice, David S. Cade, Acting General Counsel, Nancy S. Nemon, Chief Counsel, Region I, and Clifford M. Pierce, Assistant Regional Counsel, Department of Health and Human Services, were on brief for appellees.

March 11, 2011

**LYNCH**, **Chief Judge**.  The Commonwealth of Massachusetts, by the administrator of "MassHealth," its state Medicaid program, appeals from a dismissal of its lawsuit against federal officials for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  The Commonwealth claims that the federal Centers for Medicare & Medicaid Services (CMS) and associated entities violated the federal Medicaid statute when they refused to allow the Commonwealth to recover reimbursement directly from CMS in four cases of "retroactive dual eligibility."

In each of these four cases, an individual who received Massachusetts <u>Medicaid</u> funds to pay for medical services was later deemed retroactively eligible for federal <u>Medicare</u> funds for the period in which the individual received those services.  The state is trying to secure reimbursement for its past Medicaid payments by directly petitioning the federal government for reimbursement rather than going back to the providers of services, whom the Medicare program clearly recognizes as appropriate claimants.  This dispute is not over whether the Commonwealth should ultimately be reimbursed by Medicare, but whether it has chosen a permissible mechanism to recover reimbursement.  <u>Cf.</u> <u>Massachusetts</u> v. <u>United States</u>, 522 F.3d 115, 129 n.8 (1st Cir. 2008).

The Commonwealth, for understandable reasons, argues that its obligations under the federal Medicaid statute, as stated in 42 U.S.C. § 1396a(a)(25)(B) and 42 C.F.R. § 433.139(d), require that

-2-

it seek and recover reimbursement directly from CMS in these cases of retroactive dual eligibility, and that this is the Commonwealth's exclusive avenue. Secretary Sebelius and the defendant administrators of CMS and associated entities deny this and reply that the Commonwealth must instead seek reimbursement from providers, who then in turn must obtain payment from Medicare.

The federal defendants argue this is so because 42 U.S.C. § 1395f(a) and 42 C.F.R. § 424.33 only allow "providers" to receive payments from Medicare, and the Commonwealth is, as it admits, not a provider. Defendants argue that to meet its obligations to recover reimbursement under the Medicaid statute, the Commonwealth must request reimbursement from individual providers, who then must obtain payment from the federal Medicare agency. The federal defendants say that this is the procedure used by other states to recover reimbursement, that they have been consistent in their interpretation, and that Massachusetts is simply wrong when it asserts this interpretation leaves it with no way to recover reimbursement in accordance with the Medicaid statute.

In this matter of statutory interpretation, the district court held that the Medicare statute unambiguously forbids the Commonwealth from recovering reimbursement directly from CMS. In the alternative, it held that even if the Medicare statute were ambiguous, CMS's interpretation must be sustained under Chevron,

<u>U.S.A. Inc.</u> v. <u>Natural Resources Defense Council Inc.</u>, 467 U.S. 837 (1984), and <u>Auer</u> v. <u>Robbins</u>, 519 U.S. 452 (1997).

We requested at oral argument, and subsequently received, additional briefing on what mechanisms would be available for the Commonwealth to obtain reimbursement if its position were not accepted. We affirm the district court's judgment, albeit on different reasoning.

## I.

The federal Medicare and Medicaid statutes, which compose Title XVIII and Title XIX of the Social Security Act, interact. Medicare is a health insurance program for those who are over age 65 or have certain disabilities.[1] 42 U.S.C. § 1395 <u>et seq</u>. By contrast, Medicaid is a health insurance program for low-income individuals; it is funded by both the federal government and state governments.[2] 42 U.S.C. § 1396 <u>et seq</u>.

Medicaid is generally supposed to be a "payer of last resort." <u>Ark. Dep't of Health & Human Servs.</u> v. <u>Ahlborn</u>, 547 U.S.

---

[1] Medicare Part A provides hospital insurance coverage for inpatient care in hospitals and skilled nursing facilities (excluding custodial or long-term care). <u>See</u> 42 U.S.C. § 1395c <u>et seq</u>. Medicare Part B provides supplementary medical insurance coverage for doctors' services and outpatient care. <u>See</u> 42 U.S.C. § 1395j <u>et seq</u>.

[2] To be clear, payment is not coextensive under the Medicare and Medicaid statutes, which have different criteria for coverage of services. <u>Compare</u> 42 U.S.C. § 1395d <u>with</u> 42 U.S.C. § 1396a. Medicaid coverage varies by state; the federal Medicaid statute requires that states follow certain parameters to receive federal funding. 42 U.S.C. § 1396.

268, 291 (2006) (quoting S. Rep. No. 99-146, at 313 (1985)). This means that "when an individual is entitled to Medicare and eligible for Medicaid, Medicare, like any other third party, is the primary payor," and Medicaid may only pay a claim "to the extent that payment allowed under the applicable payment schedule . . . exceeds the amount of Medicare's payment." Medicaid Program: State Plan Requirements and Other Provisions Relating to State Third Party Liability Programs, 55 Fed. Reg. 1423, 1429 (1990). State Medicaid agencies must "take all reasonable measures to ascertain the legal liability of third parties . . . to pay for care and services" that would otherwise be paid by Medicaid. 42 U.S.C. § 1396a(a)(25)(A). It is not disputed that Medicare is a third party under this provision.[3]

Under the federal Medicaid statute and its accompanying regulations, state Medicaid agencies must follow two sets of requirements when addressing third-party liability.[4] First, if probable third-party liability is established at the time a claim

---

[3]     CMS regulations have made clear that Medicare is such a party. See 42 C.F.R § 433.136 ("Third party means any individual, entity or program that is or may be liable to pay all or part of the expenditures for medical assistance furnished under a State plan."); N.Y. State Dep't of Soc. Servs. v. Bowen, 846 F.2d 129, 133-34 (2d Cir. 1988) (quoting CMS manuals that "define Medicare as a third party resource").

[4]     We refer to the Commonwealth and its state Medicaid program interchangeably. The Commonwealth's Executive Office for Health and Human Services (EOHHS) administers the Massachusetts Medicaid Program (MassHealth).

is filed with the state agency, the agency must reject the claim and return it to the service provider.  42 C.F.R. § 433.139(b)(1); 42 U.S.C. § 1396a(a)(25)(A).  Second, if a state Medicaid agency only "learns of the existence of a liable third party" or "benefits become available from a third party" after Medicaid has paid the claim, the Medicaid agency must "seek recovery of reimbursement." 42 C.F.R. § 433.139(d)(2); see also 42 U.S.C. § 1396a(a)(25)(B). The Commonwealth relies on the second statute and regulation, arguing they require that it seek and obtain reimbursement directly from CMS when the liable third party is Medicare.[5]

The defendants argue that several provisions of the federal Medicare statute, particularly 42 U.S.C. § 1395f(a), forbid the Commonwealth from recovering reimbursement directly from CMS. With some exceptions not relevant here, "payment for services . . . may be made only to providers of services" if filed "in such manner, and by such person or persons as the Secretary may by regulation prescribe."  42 U.S.C. § 1395f(a)(1). By regulation, in 42 C.F.R. § 424.33, the Secretary has prescribed that "claims for services of providers" must be "[f]iled by the provider."  The

---

[5]    Two examples illustrate how retroactive dual eligibility may occur.  First, an individual over the age of 65 who does not sign up for Medicare Part A coverage or social security benefits until sometime after she turns 65 years old can automatically receive retroactive Part A coverage effective six months prior to signing up.  42 C.F.R. § 406.6(d)(4).  Second, an individual may appeal from a denial of Medicare Part A eligibility on the basis of a disability, and may be awarded retroactive coverage.

-6-

Commonwealth argues, and the defendants agree, that it is not a provider. The defendants argue that while the Commonwealth may not recover reimbursement directly from CMS, it may fulfill its obligation under the Medicaid statute by asking providers to obtain payment from Medicare.

The defendants argue that providers must comply with such requests by filing a "demand bill" with Medicare. The Medicare statute requires that providers agree to "make adequate provision for return" of money "incorrectly collected" from individuals. 42 U.S.C. § 1395cc(a)(1)(C). CMS regulations state that a "payment properly made to a provider by an individual not considered entitled to Medicare benefits will be deemed to be an 'incorrect collection' when the individual is found to be retroactively entitled to benefits." 42 C.F.R. § 489.40(b). CMS argues that this regulation, though it refers to payments made by individuals rather than state Medicaid agencies, requires that providers return state Medicaid funds in cases of retroactive dual eligibility. It argues that providers that do not comply with this requirement face sanctions, including termination of participation in Medicare. See 42 U.S.C. § 1395cc(b)(2)(A); 42 C.F.R. § 489.53(a)(1).

One reason the Commonwealth takes the position that it may recover reimbursement directly from Medicare is its interpretation of a decision of the Massachusetts Supreme Judicial Court, Atlanticare Medical Center v. Commissioner of the Division

of Medical Assistance, 785 N.E.2d 346 (Mass. 2003). In that case, a group of private healthcare providers challenged a Massachusetts regulation that required healthcare providers to return state Medicaid payments when a liable third-party insurer was identified after payment. The providers argued that Massachusetts placed an undue burden on providers by making them responsible for recovering payment from third parties. Id. The Supreme Judicial Court struck down the state regulation. In the course of its ruling it reasoned that the state regulation was inconsistent with the federal Medicaid statute, namely 42 U.S.C. § 1396a(a)(25)(B), and that state Medicaid agencies must seek reimbursement directly from liable third parties. Id. at 350.

Some of the reimbursement claims at issue in Atlanticare belonged to individuals who were retroactively deemed eligible for Medicare. We stress that neither the parties nor the issues before this court are the parties or issues that were before the Supreme Judicial Court. In Atlanticare, the issue was the validity of a state regulation; further, the regulation governed reimbursement from all types of third parties, not merely instances involving Medicare. As CMS has noted, the state regulation did not make allowances for the fact that Medicare and Medicaid are not coextensive in coverage; it required providers to return Medicaid funds before Medicare made a determination that it was liable for the particular services for which those funds had been paid.

Federal Medicare and Medicaid officials were not parties to the action and the Supreme Judicial Court never heard their views on the issue before us, as it noted in its decision. Id. at 355. Apparently, the Commonwealth did not ask CMS to submit a brief to the court expressing its views. Cf. Chase Bank USA, N.A. v. McCoy, 131 S. Ct. 871, 877 (2011).

The parties in Atlanticare initially agreed that the Commonwealth could not recover costs directly from Medicare. The Commonwealth argued that under 42 C.F.R. § 424.33, Medicare may only pay directly to providers. At oral argument, however, both parties conceded that it might be possible for the Commonwealth to recover directly from Medicare. Atlanticare, 785 N.E.2d at 353-54 & n.14. The court stated that the Commonwealth had cited no authority demonstrating that it could not obtain reimbursement directly from Medicare and that there was nothing in the record to suggest that the Commonwealth had ever attempted to obtain reimbursement in this fashion. Id. at 354-55. The decision did not address either 42 U.S.C. § 1395f(a) or 42 C.F.R. § 424.33, or how CMS administers these provisions.

Both before and after the Atlanticare decision, the federal Medicare and Medicaid agency has taken the position that only providers may petition Medicare for payment absent an express allowance to the contrary. In a 1991 letter to the Commonwealth, CMS wrote that "a State Medicaid agency . . . may not submit

initial claims for Part A Medicare services, as these claims must be filed by the provider."[6] The letter distinguished "initial claims" from appeals arising from denials of claims. It stated that "a dually eligible beneficiary may certainly appoint the State Medicaid agency to act as his or her representative to pursue appeal of an individual denied Medicare claim" but "without such appointment, the State Medicaid agency may not act on its own behalf," with an exception not relevant here.

In April 2003, shortly after the decision in Atlanticare, CMS issued a State Medicaid Director Letter stating that when an individual receives payment for health services from Medicaid and is later deemed retroactively eligible for Medicare, the state Medicaid agency should ask the provider of services to file a claim with Medicare. The letter was sent to all state Medicaid directors, not just the Massachusetts Medicaid director. In May 2003, the Commonwealth sought clarification of this letter in light of Atlanticare. In September 2003, it also sought to establish itself as a "qualified billing entity" that could submit claims to Medicare on behalf of Medicaid recipients and the facilities that provide services to those recipients.

CMS denied the Commonwealth's request that it be established as a qualified billing entity and reiterated that only

---

[6] At the time, CMS was known as the Health Care Financing Administration.

providers may file claims with Medicare. In an October 2003 letter denying the Commonwealth's request, CMS wrote that its "interpretation of the regulations prohibits Medicare Intermediaries from paying benefits due to a provider to other than the provider of services." In a December 2003 letter clarifying the April 2003 guidance letter, CMS wrote that "there is no statutory authority under Medicare to allow a state to seek recovery and be paid directly from Medicare" because "Medicare allows only providers to bill and be paid by Medicare." It repeated that when Medicare's third-party liability is not known until after a state Medicaid agency has paid a claim, the state should ask the provider to bill Medicare.

In light of CMS's statements, the Commonwealth sought a modification of the declaratory judgment entered in Atlanticare on the ground that new information demonstrated it could not recover reimbursement directly from Medicare. In support of this motion, the Commonwealth submitted copies of the April 2003 guidance letter and the ensuing correspondence between it and CMS. A Massachusetts Superior Court denied this motion. Atlanticare Med. Ctr. v. Reynolds, No. 1451-H, slip op. at 2 (Mass. Super. Ct. July 28, 2004). The Superior Court stated that it found the Supreme Judicial Court's decision in Atlanticare more persuasive than the April 2003 guidance letter, and that the letter had merely restated arguments the Commonwealth advanced in Atlanticare. Id. at 6.

Again, no federal Medicare or Medicaid official was involved in the suit or asked to submit the agency's views. The Commonwealth did not, apparently, pursue the matter to the Supreme Judicial Court.

In later communications with the Commonwealth, CMS continued to reiterate its position that a state Medicaid agency cannot recover reimbursement directly from Medicare. The Commonwealth, correctly or not, believed itself between a rock and a hard place. In December 2006, the Commonwealth submitted four test claims to CMS, seeking reimbursement from Medicare for Medicaid funds paid on behalf of individuals later deemed retroactively eligible for Medicare. CMS rejected these claims on the ground that the Commonwealth is not a provider, consistent with the agency's position stated earlier that non-providers may not receive payments from Medicare. The Commonwealth then filed this lawsuit.[7] It is undisputed that the Commonwealth has exhausted its administrative remedies.

The Commonwealth seeks (1) an injunction ordering CMS to accept, process, approve, and pay the four reimbursement claims it submitted in 2006, as well as (2) a declaration that the defendants must accept and process reimbursement claims submitted by the

---

[7]     The four test claims at issue here concern $39,792.32 in Medicaid funds paid by the Commonwealth for services to individuals later deemed retroactively eligible for Medicare. At oral argument, the Commonwealth stated that it pays roughly $4 million in Medicaid funding each year for services rendered to individuals later deemed retroactively eligible for Medicare effective at the time those services were rendered.

Commonwealth in cases of retroactive dual eligibility. The district court granted the defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6), and dismissed the Commonwealth's cross-motion for summary judgment as moot. It held that 42 U.S.C. § 1395f(a) unambiguously prohibits the Commonwealth from recovering reimbursement directly from CMS. The district court held in the alternative that even assuming the statute was ambiguous, 42 C.F.R. § 424.33 must receive deference because it was promulgated pursuant to an express delegation of authority and is not arbitrary, capricious, or manifestly contrary to the statute.

## II.

We review de novo a district court's grant of a motion to dismiss, taking as true all well-pleaded facts and making all reasonable inferences in favor of the plaintiff. Boroian v. Mueller, 616 F.3d 60, 64 (1st Cir. 2010). This case does not involve any factual disputes, only a pure question of law: whether the federal Medicaid statute requires that CMS allow the Commonwealth to recover reimbursement directly from CMS in cases of retroactive dual eligibility. This does not involve review of whether there is a valid claim for reimbursement in these four test cases; it involves review of the appropriate mechanism to obtain such reimbursement. We agree with the defendants that as a matter of federal law, the Commonwealth may not recover reimbursement directly from CMS in cases of retroactive dual eligibility. This

-13-

does not mean, however, that the state has no mechanism to receive reimbursement.  It does.

A.        Agency Deference Under Chevron

This question of statutory interpretation must be treated within the familiar framework set forth in Chevron, 467 U.S. 837. The Secretary of Health and Human Services administers the federal Medicare and Medicaid statutes, as well as a number of other statutory provisions within the Social Security Act.  The Secretary has delegated administrative responsibilities for Medicare and Medicaid to CMS.  See 42 C.F.R. § 400.200.  In assessing the requirements of this statutory scheme, we must be mindful of any deference to which CMS may be entitled.

Under Chevron, when a court reviews an agency's construction of the statute it administers, the court must first ask whether "Congress has directly spoken to the precise question at issue."  Chevron, 467 U.S. at 842.  If the intent of Congress is unambiguous, the court must follow that intent.  Id. at 842-43.  If the intent of Congress is ambiguous, the agency's interpretation is entitled to Chevron deference "when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." United States v. Mead Corp., 533 U.S. 218, 226-27 (2001).  Under Chevron, such agency interpretations must be upheld if they are

-14-

"based on a permissible construction of the statute." Chevron, 467 U.S. at 843.

Courts may not disturb regulations promulgated pursuant to express statutory authority unless they are "arbitrary, capricious or manifestly contrary to the statute" and they may not disturb regulations promulgated pursuant to implicit statutory authority unless the agency's interpretation is unreasonable. Id. at 844. When an agency interprets its own ambiguous regulations, its interpretation is controlling unless it is "plainly erroneous or inconsistent with the regulation." McCoy, 131 S. Ct. at 880 (quoting Auer, 519 U.S. at 461). Deference is not given, however, to a "post hoc rationalizatio[n] advanced by an agency seeking to defend past agency action against attack" or when there is reason to "suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter in question." Id. at 881 (alteration in original) (quoting Auer, 519 U.S. at 462) (internal quotation marks omitted).[8]

---

[8]    Both parties cite cases from beyond this circuit that they argue support their constructions of the Medicare and Medicaid statutes in this case. See Conn. Dep't of Soc. Servs. v. Leavitt, 428 F.3d 138 (2d Cir. 2005); N.Y. State Dep't of Soc. Servs. v. Bowen, 846 F.2d 129 (2d Cir. 1988); Evanston Hosp. v. Hauck, 1 F.3d 540 (7th Cir. 1993); New York v. Sebelius, No. 07-CV-1003, 2009 WL 1834599 (N.D.N.Y. June 22, 2009); Mich. Dep't of Soc. Servs. v. Shalala, 859 F. Supp. 1113 (W.D. Mich. 1994); Petition of Maxi Drug, Inc., 915 A.2d 480 (N.H. 2006). While we have reviewed these cases, we note that they do not bind this circuit nor, more importantly, do they speak directly to the issue at hand.

B.          Chevron Step One

Our first holding begins and ends with step one of the Chevron analysis: the statutory scheme forecloses the interpretation advanced by the Commonwealth.  To determine "whether a statute exhibits Chevron-type ambiguity . . . courts look at both the most natural reading of the language and the consistency of the 'interpretive clues' Congress provided."  Succar v. Ashcroft, 394 F.3d 8, 22 (1st Cir. 2005) (quoting Gen. Dynamics Land Sys., Inc. v. Cline, 540 U.S. 581, 586 (2004)).  This analysis looks to the text, structure, and, when permissible, legislative history of the statute.  Id. at 22, 30.  We look first to text and structure; we note that neither party introduces legislative history and we are unaware of any on point.[9]

Both parties contend that the plain language of the statutory scheme unambiguously supports their position.  The Commonwealth points to 42 U.S.C. § 1396a(a)(25)(B), which states that when third party liability "is found to exist after medical assistance has been made available," with an exception not relevant here, the state Medicaid agency must "seek reimbursement for such assistance to the extent of such legal liability."  The defendants

---

[9]     In Atlanticare, the Supreme Judicial Court considered legislative history in construing from whom state Medicaid agencies must seek reimbursement under 42 U.S.C. § 1396a(a)(25)(B).  Atlanticare Med. Ctr. v. Comm'r of the Div. of Med. Assistance, 785 N.E.2d 346, 351-352 (Mass. 2003).  The parties here do not invoke that legislative history, which did not concern reimbursement directly from Medicare.

point to 42 U.S.C. § 1395f(a), which states that, with exceptions again not relevant here, "payment for services furnished an individual may be made only to providers of services" as defined in the Medicare statute.

Neither of these provisions, read in isolation, speak to whether the Commonwealth, which is not a provider, may recover reimbursement directly from Medicare in cases of retroactive dual eligibility. Although 42 U.S.C. § 1396a(a)(25)(B) plainly requires that state Medicaid agencies seek reimbursement in such cases, it does not create a right to receive reimbursement directly from CMS. This provision does not identify from whom the state agency should seek this reimbursement. The federal Medicare agency could be a candidate, but the providers that received the initial payment are more plausible. The fact that 42 U.S.C. § 1395f(a) refers to "payment for services furnished an individual," moreover, permits the Commonwealth to argue that its claim is instead for reimbursement for past payments made for such services.

Although no statutory provision explicitly resolves the question presented here, the statutory scheme does not allow the interpretation advanced by the Commonwealth. The Medicare statute equates reimbursement and payment and does not allow non-providers to receive payments from Medicare. The Commonwealth is not included among any of the express allowances in the Medicare statute for non-providers to receive payments. The Medicare

statute thus forecloses the Commonwealth from receiving reimbursement directly from Medicare.[10] This result is consistent with both the Medicaid statute's requirement that state Medicaid agencies seek recovery of reimbursement and Congress's intent that Medicaid generally be the payer of last resort.

We look first to the meaning of "reimbursement" in the statutory scheme. Neither the Medicare statute nor the Medicaid statute supports a distinction between payment and reimbursement relevant to the test claims in this case. As to the Medicare statute, 42 U.S.C. § 1395f(a) discusses claims for reimbursement within its provisions governing payment for services. The statute does not define reimbursement, nor does it express parameters for reimbursement claims as if they were different from the parameters for payment claims. As to the Medicaid statute, 42 U.S.C. § 1396a(a)(25)(B) neither defines reimbursement nor distinguishes between it and other forms of payment for our purposes. In this statutory context, it is most natural to read reimbursement as a particular type of payment. See Succar, 394 F.3d at 22.

The Commonwealth challenges this reading on two grounds. First, it argues that the Medicare statute allows non-providers to

---

[10]     The Commonwealth does not contest that the payments at issue in this case were for "services furnished an individual" within the meaning of 42 U.S.C. § 1395f(a). Although the Commonwealth did not provide the services in the four test cases, its reimbursement claims seek to recoup payments for such services as defined in 42 U.S.C. § 1395cc(e) and accompanying sections.

recover reimbursement despite its limitations on who may recover payments for services. Second, it argues that this interpretation of the statutory scheme contravenes congressional intent that Medicaid generally be the payer of last resort.

As to the first argument, the Commonwealth has not identified any statutory language that would allow state Medicaid agencies to recover reimbursement from CMS under these circumstances. The Commonwealth has identified only one instance in which the statute allows payment for reimbursement to non-providers: an express exception to 42 U.S.C. § 1395f(a) involving emergency services. See 42 U.S.C. §§ 1395f(d)(2) & 1395n(b)(2). We are aware of only one other instance in which the statute allows a non-provider to receive reimbursement: when an individual has made payments for certain hospital services furnished outside the United States. See 42 U.S.C. § 1395f(f)(4). These provisions do not allow all non-providers to receive reimbursement, and they do not make any specific allowance for the Commonwealth's reimbursement claims. Rather, they are express exceptions to the general rule we have noted.

As to the second argument, our reading of the statute is not in tension with Congress's intent that Medicaid generally be a payer of last resort. The statute does not preclude state Medicaid agencies from receiving reimbursement in cases of retroactive dual eligibility through a mechanism other than direct application to

-19-

Medicare. As the Commonwealth argues, "[t]he choice between two federal statutes requires an analysis of both, to see if they are indeed incompatible or if they can be harmonized." Boston & Maine Corp. v. Mass. Bay Transp. Auth., 587 F.3d 89, 98 n.1 (1st Cir. 2009) (quoting Coker v. Trans World Airlines, Inc., 165 F.3d 579, 583-84 (7th Cir. 1999)). Here, the Medicare and Medicaid statutes can be harmonized with one another in a manner that preserves the purpose of the statutory scheme recognized in Ahlborn: state Medicaid agencies may seek and recover reimbursement by asking providers to return state Medicaid funds.

The Commonwealth advances a functional argument that, whatever the Medicare statute says, the Commonwealth cannot reasonably expect to receive reimbursement from providers and that therefore the statute should be construed to allow it to recover reimbursement directly from Medicare. The first of these propositions is doubtful, and the second does not follow from it. The Commonwealth has never employed the demand bill procedure that the Secretary describes as an available alternative, and so it cannot say that the procedure will not work. Nor does the Commonwealth cite any statutory language that prohibits state Medicaid agencies from recovering reimbursement from Medicare by asking providers to employ this demand bill procedure.[11]

---

[11] The Commonwealth makes two tangential arguments. First, it argues that 42 U.S.C. § 1396a(a)(25)(B) should not be read as merely ensuring that the rights of Medicaid

-20-

C.        Chevron Step Two and Auer

Our alternative holding is under the second step of Chevron, under which we look to the agency's regulations. Even if the statutory scheme did not speak unambiguously as to whether the Commonwealth may obtain reimbursement directly from Medicare in cases of retroactive dual eligibility, CMS's interpretation of its regulations resolves this question and is entitled to deference. The Commonwealth does not dispute the validity of the regulation upon which CMS relies, 42 C.F.R. § 424.33. Nor does it challenge CMS's regulation concerning the obligations of state Medicaid agencies seeking reimbursement as required by the Medicaid statute, 42 C.F.R. § 433.139(d). The Commonwealth only challenges the agency's interpretation of 42 C.F.R. § 424.33. This challenge fails under Auer. See McCoy, 131 S. Ct. at 880.

On their face, the agency's regulations do not expressly speak to whether the Commonwealth may recover reimbursement

---

beneficiaries are subrogated to the states, as is already required in 42 U.S.C. § 1396k(a)(1)(A). We do not read the statute in this way. Whereas 42 U.S.C. § 1396a(a)(25)(B) imposes an affirmative obligation on state Medicaid agencies to seek reimbursement, 42 U.S.C. § 1396k(a)(1)(A) confers rights upon state Medicaid agencies to pursue certain claims as a subrogee.

Second, the Commonwealth argues that the Medicare statute only requires that providers "make adequate provision for return" of "incorrectly collected" funds under 42 U.S.C. 1395cc(a)(1)(C) and that state Medicaid funds in cases of retroactive dual eligibility were not incorrectly collected when received. This language may not expressly require providers to return funds in these cases, but it does not preclude them from returning such funds at the request of a state Medicaid agency.

-21-

directly from Medicare in cases of retroactive dual eligibility. Under the Medicare statute, the Secretary has provided that "[a]ll claims for services of providers" must be "[f]iled by the provider." 42 C.F.R. § 424.33(a). Under the Medicaid statue, the Secretary has only provided that an agency that seeks reimbursement "must seek recovery of reimbursement" subject to certain time constraints. 42 C.F.R. § 433.139(d). These provisions do not address whether reimbursement claims are "claims for services of providers." Nor does the broader regulatory structure cast light on this question. These regulations do resolve whether the Commonwealth may file claims for services of providers directly with Medicare; it may not.

The Secretary has interpreted 42 C.F.R. § 424.33 such that state Medicaid agencies may not recover reimbursement directly from Medicare in cases of retroactive dual eligibility. In its April 2003 guidance letter to state Medicaid directors, CMS wrote that "Medicaid is usually the payer of last resort" and that when a "Medicaid agency learns of the existence of a liable third party after a claim is paid, or benefits become available from a third party after the claim is paid, [the state Medicaid agency] must seek recovery from that third party." In cases "[w]hen that third party is Medicare," CMS wrote, "neither the Medicare nor Medicaid statute, nor HHS's regulations or policies prohibit any state from recouping its Medicaid payment from providers" in two situations.

-22-

According to the guidance letter, a state may recoup its Medicaid payment from providers when (1) "Medicare has determined that it is liable for the service at issue" or (2) "a beneficiary, beneficiary representative, or state (as the beneficiary's subrogee) timely requests the provider to file a claim with Medicare and the provider fails" to do so in a timely and appropriate manner. In the letter, CMS also noted that, acting as a beneficiary's subrogee, "a state may request the provider to submit a claim for Medicare payment and the provider must honor that request" by submitting a "demand bill." The letter concluded that "if a provider fails to submit timely a demand bill, the provider violates its provider agreement with Medicare if it charges the beneficiary (or the beneficiary's subrogee), or retains any charge already collected from the beneficiary or subrogee, for such services."

Although the April 2003 letter did not expressly state that the Commonwealth cannot receive reimbursement directly from Medicare, later letters from CMS made this point clear. In its December 2003 letter, CMS stated that "there is no statutory authority under Medicare to allow a state to seek recovery and be paid directly from Medicare." It stated that "Medicare allows only providers to bill and be paid by Medicare" and that the state "may timely request [a] provider to submit a bill timely to Medicare." In a June 2005 letter to the Commonwealth, CMS reiterated that

-23-

"there is no statutory authority for reimbursing Medicaid directly for services rendered to Medicare beneficiaries."  There is no dispute that these statements apply directly to the situation at hand and preceded the present litigation.

The Commonwealth makes three arguments that the agency's interpretation of 42 C.F.R. § 424.33 is plainly erroneous or inconsistent with the regulation.  First, it argues that 42 C.F.R. § 424.33 merely parrots the statutory language of 42 U.S.C. § 1395f(a).  Second, it argues that CMS's reliance on 42 C.F.R. § 424.33 and 42 U.S.C. § 1395f(a) is a post hoc litigation position because CMS did not cite those provisions in its recent letters to the Commonwealth.  Third, it argues that CMS's interpretation of 42 C.F.R. § 424.33 is inconsistent with the statutory scheme, including CMS's other regulations.  These arguments are without merit.

As to the first argument, it is true that the Supreme Court has held that an agency "does not acquire special authority to interpret its own words when, instead of using its expertise and experience to formulate a regulation, it has elected to merely paraphrase the statutory language." Gonzales v. Oregon, 546 U.S. 243, 257 (2006).  That is not the case here, however.  The regulation fills an express gap in 42 U.S.C. § 1395f(a) as to who may file claims, as opposed to who may receive payments.  42 C.F.R. § 424.33.  It also uses more general terms than the statute,

-24-

referring to "claims for services" rather than "payment for services." See id. Even if the statutory language did not clearly include reimbursement as a type of payment, the regulation leaves open the possibility that petitions for reimbursement as well as petitions for payment are both types of "claims." See id.

As to the Commonwealth's second argument, it is true that an agency's interpretation of its regulation may not be entitled to deference if it is merely a post hoc rationalization for past agency action rather than the agency's fair and considered judgment on the issue. See McCoy, 131 S. Ct. at 881. But that is not the case here, either. The agency's construction of the statute long predates this litigation. In Atlanticare, the Commonwealth argued that it could not recover reimbursement from Medicare for precisely the reason CMS now advances: it is not a provider. In that case, the Commonwealth relied upon the federal agency's 1991 letter stating that only providers may seek payments directly from Medicare. The agency reiterated this position in 2003 with respect to claims for reimbursement. The Commonwealth filed its four test claims in this case precisely to challenge that construction.

The fact that CMS did not explicitly reference 42 C.F.R. § 424.33 or 42 U.S.C. § 1395f(a) in its recent letters to the Commonwealth does not transform the agency's reliance on these provisions into a post hoc rationalization or demonstrate a lack of considered judgment. The basis for the federal agency's position

-25-

has been clear since before this litigation began.  In the federal agency's 1991 letter to the Commonwealth, it invoked 42 C.F.R. §§ 424.30-424.45 to explain why, with exceptions not relevant here, providers were required to file the "initial claim" with Medicare. In its motion for reconsideration of the Atlanticare decision, the Commonwealth conveyed to the Superior Court that "Medicare will only pay directly to providers under 42 C.F.R. § 424.33" and another provision.  Atlanticare, No. 1451-H, slip op. at 3.

As to the third argument, the Commonwealth asserts that CMS's construction of 42 C.F.R. § 424.33 contravenes congressional intent that Medicaid serve as payer of last resort.  Specifically, the Commonwealth argues that the federal agency's interpretation necessarily precludes it from receiving reimbursement when Medicare is retroactively liable for services previously paid by its state Medicaid agency.  The Commonwealth makes two arguments for why this is the case.  First, it argues that the Atlanticare decision forbids the Commonwealth from recovering reimbursement through providers rather than directly from Medicare, though that was not the issue before the Supreme Judicial Court.  Second, it argues that the Secretary has not shown that CMS may compel providers to comply with a state Medicaid agency's request that they file a demand bill with Medicare to recover funds for reimbursement.

It does not follow from these arguments that the Secretary's interpretation precludes state Medicaid agencies from

-26-

reasonably expecting to receive reimbursement in cases of retroactive dual eligibility. With respect to the Commonwealth's first argument, it is not relevant to our inquiry that Atlanticare can be read to limit some of the options available to the Commonwealth.[12] We must look to whether the federal agency's interpretation of 42 C.F.R. § 424.33 is plainly inconsistent with that regulation, not whether the agency's interpretation is inconsistent with a judicial construction of the statute. With respect to its second argument, the Commonwealth has never requested that a provider file a demand bill in the manner the Secretary describes. It has no basis to argue that such requests will go unheeded or that there exists no lawful avenue by which compliance with such requests could be enforced.[13]

---

[12] As the Supreme Judicial Court noted, it rested its holding on the particular circumstances at issue in that case and on the absence of evidence or argument as to whether state Medicaid agencies may obtain reimbursement directly from Medicare. It also noted that it did not know the Secretary's position on that matter. Atlanticare, 785 N.E.2d at 354-55. This case has given rise to additional evidence and argument, including by the Secretary.

[13] We need not address the Commonwealth's belated effort to shift this litigation to a dispute about another regulation, 42 C.F.R. § 489.40(b). It is CMS's position that a payment made by a state Medicaid agency on behalf of an individual later deemed retroactively eligible for Medicare constitutes an "incorrect collection" under 42 C.F.R. § 489.40(b). From this, the agency argues that providers that do not make "adequate provision for return" of these "incorrectly collected" funds will be ineligible for future payments under 42 U.S.C. § 1395cc(a)(1)(C).

In its supplemental brief, the Commonwealth belatedly argues this interpretation of 42 C.F.R. § 489.40(b) is plainly erroneous and inconsistent with the regulation. We do not decide the question. Regardless, the Commonwealth has not shown that it

We consider CMS bound by its representation as to the mechanisms available for the Commonwealth to seek and recover reimbursement.[14]  See Massachusetts, 522 F.3d at 129 n.8.  The Commonwealth has raised valid practical concerns about the consequences of CMS's position for the states.  From its point of view, it is less expeditious for state Medicaid agencies to ask providers to file demand bills in cases of retroactive dual eligibility than it would be for state Medicaid agencies to petition CMS directly.

The federal agency, however, has policies supporting its interpretation within the context of this highly complex statutory scheme.  For example, the defendants noted at oral argument that an entity that makes a false representation to CMS concerning a medical service can be held liable under federal causes of action against fraud.  This is a considerable incentive toward honesty and efficiency.  The Commonwealth argues that there is an ample federal anti-fraud enforcement mechanism already but does not directly

cannot require providers that receive state Medicaid funds to follow the demand bill procedure.  Nor has it shown that other states have been unable to secure reimbursement by asking providers to submit demand bills to Medicare.  CMS represents that this is the standard procedure across the country.

[14]    The Commonwealth argues that CMS's positions in this case cannot bind providers that are not parties to this litigation.  See Beaudette v. Louisville Ladder, Inc., 462 F.3d 22, 26 (1st Cir. 2006).  We do not assert that it does.  However, CMS's positions do bind CMS with respect to how it will address future behavior by providers relevant to its positions in this suit.

address this policy concern. If state Medicaid agencies could simply relay past claims to Medicare, it is not clear that providers could be held liable for fraud in this manner.

We are not the forum to evaluate these competing policy concerns. The decision on policy issues belongs to the Congress, and where Congress has delegated, to the Secretary. Our duty is to interpret the law, and policy arguments should be made to the Executive and to the Congress.

## III.

We emphasize that we are only answering a very specific question within the context of the arguments that have been presented to us. This is a complex statutory area, and there have been strong arguments presented on both sides. We find that CMS's position that state Medicaid agencies may not recover reimbursement directly from Medicare is required by the statutory language and, in any event, is consistent with the agency's regulations. It is clear that other states have recovered reimbursement through other means, including the demand bill mechanism the agency claims providers must follow in cases of retroactive dual eligibility.

The judgment of the district court is affirmed.