NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12828


ATLANTICARE MEDICAL CENTER & others[1]  vs.  DIVISION OF MEDICAL
ASSISTANCE.



Suffolk.      February 10, 2020. - July 21, 2020.

Present:  Gants, C.J., Lenk, Gaziano, Lowy, Budd, Cypher, &
Kafker, JJ.



Medicaid.  Division of Medical Assistance.  Public Welfare,
    Medical assistance benefits.  Regulation.  Hospital,
    Medicaid reimbursement.  Medicare.  Judgment, Relief from
    judgment.  Practice, Civil, Relief from judgment.




    Civil action commenced in the Superior Court Department on
April 6, 2000.

    Following review by this court, 439 Mass. 1 (2003), a
motion for relief from judgment, filed on September 28, 2018,
was heard by Debra A. Squires-Lee, J.

    The Supreme Judicial Court granted an application for
direct appellate review.


    Douglas S. Martland, Assistant Attorney General, for the
defendant.
    Charlene E. Kent for the plaintiffs.

_____

    [1] Salem Hospital; Lawrence General Hospital; Hale Hospital;
Beverly Hospital; and Deaconess Waltham Hospital.

KAFKER, J.  In the instant case we are asked to revisit a decision issued by this court in 2003 involving State Medicaid reimbursements, in light of subsequent developments to the relevant Federal law.  At issue is the State's Medicaid program, MassHealth, which provides insurance for indigent residents of the Commonwealth.[2]  In Atlanticare Med. Ctr. v. Commissioner of the Div. of Med. Assistance, 439 Mass. 1, 3, 5 (2003) (Atlanticare I), this court affirmed a judgment declaring that part of a State Medicaid regulation, 130 Code Mass. Regs. § 450.316(E) (1998),[3] was inconsistent with the Federal Medicaid scheme.  The regulatory provision required health care providers to return payments to MassHealth where a third-party insurer was later identified as liable for the payment that MassHealth had already paid out.  Id. at 2.  We concluded that the Federal Medicaid scheme tasked the State Medicaid agency, not individual providers, with seeking reimbursement from liable third-party

_____

[2] At the time the original complaint was filed, the Division of Medical Assistance was designated as the "single State agency" responsible for administering the State Medicaid plan.  See 42 U.S.C. § 1396a(a)(5) (State Medicaid plans must designate single State agency to administer plan).  In 2003, however, the Executive Office of Health and Human Services was deemed to be the single State agency responsible for administration of the program.  See G. L. c. 118E, § 1, inserted by St. 2003, c. 26, § 308.  For simplicity, we will refer to the defendant as "MassHealth" throughout this opinion.

[3] The provision at issue in this regulation has since been moved from subsection (E) to subsection (F) of 130 Code Mass. Regs. § 450.316 (2019).

insurers, including Medicare. Id. at 6-7. We thus held that the State regulation impermissibly shifted the burden for seeking reimbursement onto health care providers, in violation of the Federal statutory scheme. Id. at 14. In so holding, we rejected the argument that MassHealth would be unable to directly seek reimbursement where the liable third party at issue was Medicare. Id. at 11.

Pursuant to our ruling in Atlanticare I, MassHealth began seeking reimbursements directly from Medicare, rather than from providers, where Medicare was identified as a liable third-party insurer. The Center for Medicare & Medicaid Services (CMS), a division of the Department of Health and Human Services (HHS) that oversees the administration of Medicaid and Medicare at the Federal level, refused to issue reimbursements from Medicare to MassHealth, however. See Daley v. Secretary of the Executive Office of Health & Humans Servs., 477 Mass. 188, 190 (2017); Massachusetts v. Sebelius, 638 F.3d 24, 25 (1st Cir. 2011) (Sebelius). CMS maintained that Medicare funds could only be paid out to providers, not MassHealth, and that MassHealth could only obtain Medicare reimbursements by going through providers. Sebelius, supra. MassHealth brought suit against CMS in Federal court, challenging this position. Id. at 29. In a 2011 ruling, the United States Court of Appeals for the First Circuit agreed with CMS's position, and held that the Federal Medicare scheme

prohibited State Medicaid agencies, including MassHealth, from receiving funds from Medicare. See id. at 36. At around the same time, a Federal Medicare regulation was amended to acknowledge the practice of State Medicaid agencies obtaining Medicare reimbursements through providers, rather than seeking such reimbursements directly from Medicare. See 42 C.F.R. § 424.44(b)(3) (2019).

In light of the First Circuit's holding and the amendment to 42 C.F.R. § 424.44(b), MassHealth sought to modify the declaratory judgment and restore MassHealth's ability to obtain reimbursements from providers, rather than liable third parties. For the reasons discussed infra, we conclude that MassHealth has demonstrated a sufficient change in circumstances to warrant modification of the judgment. We further conclude, however, that only a narrow modification of the judgment is necessary to allow MassHealth to seek reimbursement where the liable third party is Medicare. Accordingly, we order that this case be remanded to the Superior Court for modification of the judgment in accordance with this opinion.

1. Background. a. Overview of Medicaid and Medicare. Medicare is a Federal program that provides health care benefits to the elderly and disabled. See Briggs v. Commonwealth, 428 Mass. 241, 243 (1999); 42 U.S.C. §§ 1395 et seq. Medicare is supported entirely by Federal funds and is administered by the

Federal government. See Briggs, supra. Medicaid, by contrast, is a health care program designed to assist the needy and indigent. See id.; 42 U.S.C. § 1396 et seq. Unlike Medicare, Medicaid follows a model of "cooperative federalism" between the State and Federal governments (citation omitted). See Harris v. McRae, 448 U.S. 297, 308 (1980) (McRae). State participation in Medicaid is voluntary, but those States that choose to participate must develop a State plan in compliance with Federal requirements. See Massachusetts Eye & Ear Infirmary v. Commissioner of the Div. of Med. Assistance, 428 Mass. 805, 812 (1999). State Medicaid plans must comply with requirements set forth in the Federal statutory scheme, as well as Federal regulations promulgated by HHS. See id. In exchange, "the Federal Government agrees to pay a specified percentage of 'the total amount expended . . . as medical assistance under the State plan . . . .'" McRae, supra, quoting 42 U.S.C. § 1396b(a)(1). Although States must comply with Federal requirements, Medicaid is designed to provide some flexibility to the States to formulate a plan tailored to each State's individual needs. See Danvers Pathology Assocs., Inc. v. Atkins, 757 F.2d 427, 428 (1st Cir. 1985).

Eligibility for Medicaid and Medicare are not mutually exclusive. An individual who is both elderly and indigent may be "dual eligible[]" for both programs. See Briggs, 429 Mass.

at 244. See also Connecticut Dep't of Social Servs. v. Leavitt, 428 F.3d 138, 141 (2d Cir. 2005) (Leavitt) ("Because elderly Americans are covered by Medicare, and poor Americans are covered by Medicaid, the elderly poor are covered by both programs. These beneficiaries are known as 'dual eligibles'"). Where an individual is dual eligible, and receives a health care service that could be covered by either Medicare or Medicaid, Medicare is to pay in the first instance. See Leavitt, supra; 42 U.S.C. § 1396a(a)(25)(A). This is because Medicaid is designed to be a "payer of last resort." Arkansas Dep't of Health & Human Servs. v. Ahlborn, 547 U.S. 268, 291 (2006). Under this principle, Medicaid is not to be used to fund a health care expense where another funding resource is available. Shweiri v. Commonwealth, 416 Mass. 385, 388-389 (1993). The Federal statutory and regulatory scheme outlines two methods for ensuring that Medicaid remain the payer of last resort where another funding resource is identified: "cost avoidance" and "pay and chase." See Miller v. Gorski Wladyslaw Estate, 547 F.3d 273, 278 (5th Cir. 2008).

    i. Cost avoidance. Cost avoidance is the primary method of ensuring that Medicaid funds are not used where another funding resource is available. See id. States are required to "take all reasonable measures to ascertain the legal liability of third parties . . . to pay for care and services available

under the plan" before paying out Medicaid funds.  See 42 U.S.C. § 1396a(a)(25)(A).  A third party is defined as "any individual, entity or program that is or may be liable to pay all or part of the expenditures for medical assistance furnished under a State plan."  42 C.F.R. § 433.136 (2010).  Reasonable measures include the submission of a plan to the Secretary of HHS "for pursuing claims against such third parties."  42 U.S.C. § 1396(a)(25)(A)(ii).  In accordance with these requirements, Massachusetts has promulgated a regulation mandating that providers make "diligent efforts to obtain payment first from other resources . . . so that the MassHealth agency will be the payer of last resort."  130 Code Mass. Regs. § 450.316 (2019).

Where a State is able to establish the "probable existence" of third-party liability at the time when a claim is filed, "the agency must reject the claim and return it to the provider for a determination of the amount of liability."  42 C.F.R. § 433.139(b)(1) (2019).  Once such a liability determination is made, "the agency must then pay the claim to the extent that payment allowed under the agency's payment schedule exceeds the amount of the third party's payment."  42 C.F.R. § 433.139(b)(1).  Where probable third-party liability cannot be established, or where benefits are not available at the time the claim is filed, the State Medicaid agency is responsible for paying the claim.  See 42 C.F.R. § 433.139(c).

ii. Pay and chase. In the regular course, the Commonwealth's "diligent efforts" requirement ensures that MassHealth does not pay for health care services that could have been paid for by a third-party insurer. See 130 Code Mass. Regs. § 450.316. Instances arise, however, where a liable third party is identified after Medicaid has already paid the provider. For example, individuals who are eligible for Medicaid may become retroactively eligible for Medicare as well. See, e.g., 42 C.F.R. § 406.6(d)(4) (2019) (individual who signs up for Medicare Part A coverage at some point after he or she first becomes eligible is entitled to retroactive benefits). Such individuals are referred to as "retroactive dual eligibles." In such instances, Medicaid employs the secondary "pay and chase" method of handling third-party liability, which consists of the following:

> "in any case where such a [third-party] legal liability is found to exist after medical assistance has been made available on behalf of the individual and where the amount of reimbursement the State can reasonably expect to recover exceeds the costs of such recovery, the State or local agency will seek reimbursement for such assistance to the extent of such legal liability."

42 U.S.C. § 1396a(a)(25)(B).

> Federal regulations further mandate that

> "if [a State Medicaid] agency learns of the existence of a liable third party after a claim is paid, or benefits become available from a third party after a claim is paid, the agency must seek recovery of reimbursement within [sixty] days after the end of the month it learns of the

existence of the liable third party or benefits become available."

42 C.F.R. § 433.139(d)(2).[4] Reimbursement is to be sought "unless the agency determines that recovery would not be cost effective in accordance with" 42 C.F.R. § 433.139 (f). 42 C.F.R. § 433.139(d)(3). Recovery is considered cost effective under 42 C.F.R. § 433.139(f) where "the amount [the State Medicaid agency] reasonably expects to recover will be greater than the cost of recovery." 42 C.F.R. § 433.139(f)(1). A State's Medicaid "plan must specify the threshold amount or other guideline that the agency uses in determining whether to seek recovery of reimbursement from a liable third party, or describe the process by which the agency determines that seeking recovery of reimbursement would not be cost effective." 42 C.F.R. § 433.139(f)(2).

    iii. <u>Approaches to pay and chase</u>. To address the implementation of pay and chase for instances of post-payment

---

[4] A State agency may request a waiver of the sixty-day deadline for seeking reimbursement. See 42 C.F.R. § 433.139(e)(1). In order to obtain a waiver of this requirement, however, a State agency must demonstrate that imposing the sixty-day requirement is not cost effective. See 42 C.F.R. § 433.139(e)(1). In order to do so, the agency must provide "adequate documentation" to the Center for Medicare & Medicaid Services (CMS) as to the lack of cost effectiveness, examples of which include "costs associated with billing, claims recovery data, and a State analysis documenting a cost-effective alternative that accomplishes the same task." 42 C.F.R. § 433.139(e)(1)(ii).

third-party liability, Massachusetts promulgated the following regulation: "[i]f a third-party resource is identified after the provider has already billed and received payment from the MassHealth agency, the provider must promptly return any payment it received from the MassHealth agency. The provider must bill all third-party resources before resubmitting a claim to the MassHealth agency." 130 Code Mass. Regs. § 450.316(F). In other words, this regulation implements pay and chase by allowing MassHealth to void a provider's claim and recoup the money from the provider. The provider is then left to seek payment from the third party itself, whether the third party is a private insurer or Medicare. The instant litigation arose out of a challenge to the legality of this regulation.

An alternative method for implementing pay and chase, and the one that MassHealth presently relies on, is known as demand billing. Under this method of recovery, MassHealth requests that the provider submit a bill to Medicare and repay MassHealth once Medicare has paid the provider. MassHealth contends that demand billing results in significant delays in recovery, and cannot be utilized where a Medicaid recipient becomes retroactively eligible for Medicare more than twelve months after the date of service, due to Medicare filing deadlines.

b. Procedural history. i. Initiation of suit and Atlanticare I. In 1998, MassHealth brought enforcement actions

against the plaintiff hospitals, seeking reimbursement for Medicaid funds that had been paid out to the providers. Atlanticare I, 439 Mass. at 4-5. As this court explained:

> "In the three years prior to [MassHealth]'s enforcement action, each hospital had provided medical services to individuals deemed eligible for Medicaid benefits. It is undisputed that, in all but two instances not at issue here, the hospitals made diligent efforts to identify liable third-party insurers, in conformity with [MassHealth]'s due diligence regulation. When the hospitals were unable to identify liable third-party insurers, they sought and received payment from [MassHealth]. Subsequently, in 1998, [MassHealth] informed the hospitals that it had identified third parties responsible for the claims, and, pursuant to the reimbursement regulation, ordered the hospitals to return the Medicaid payments to [MassHealth] and to rebill the liable third parties. In some instances, Medicare was the newly discovered third party; the patients serviced by the hospitals in those instances had become retroactively eligible for Medicare benefits. In those instances, no amount of 'diligent efforts' by the healthcare providers would have identified a liable third-party insurer -- Medicare -- as Medicare provided the insurance coverage retroactively, i.e., only after the healthcare services had been provided. The remaining instances involved private insurers."

Id. MassHealth prevailed in the administrative decisions that ensued. See id. at 5. The hospitals sought review in Superior Court, arguing that Federal law mandated that the State Medicaid agency, rather than the health care provider, seek reimbursement from liable third parties. Id. at 3, 5. A judge in the Superior Court ruled in favor of the hospitals. Id. at 3. In so ruling, the judge "declared the regulation unlawful to the extent that it required the hospitals to return payments to

[MassHealth] and rebill liable third parties." Id. at 5. MassHealth appealed, and this court transferred the case from the Appeals Court on its own motion. Id. at 3.

In March 2003, we issued a decision affirming the Superior Court's ruling and concluding that Federal law required MassHealth to seek reimbursements directly from liable third parties, including Medicare. See id. at 5. We held that "[t]he natural reading of the text of [42 U.S.C.] § 1396a(a)(25)(B) is that the State or local agency must seek reimbursement from a liable third party, provided it is cost effective to do so." Id. at 6. We also based our holding on the legislative history, the corresponding Federal regulation, and the then-current 1990 State Medicaid manual issued by the Health Care Financing Administration (HCFA).[5] Id. at 8-10. More specifically, we observed that 42 U.S.C. § 1396a(a)(25)(B) made numerous references to liable third parties, but made no mention of providers. Atlanticare I, supra at 6-7. The statute's legislative history also indicated that Congress contemplated seeking reimbursement from "liable third parties" (emphasis omitted). Id. at 8. The cost-benefit analysis mandated by the statute further implied that agencies would seek recovery from

---

[5] The Health Care Financing Administration was the predecessor to CMS. Massachusetts v. Sebelius, 638 F.3d 24, 28 n.6 (1st Cir. 2011).

third parties, as the cost of seeking recovery from a provider would generally be de minimis.  Id. at 7.  Additionally, the corresponding Federal regulations made explicit reference to seeking reimbursement "from a liable third party" and similarly contained cost-benefit analysis provisions (emphasis omitted).  Id. at 9.  Finally, the 1990 HCFA manual set forth a pay and chase method of reimbursement that required the State Medicaid agency to "seek recovery of reimbursement from the third party" (emphasis omitted).  Id. at 10.

On this basis, we concluded that 42 U.S.C. § 1396a(a)(25)(B) required State Medicaid agencies to seek reimbursement directly from the liable third party, not the health care provider.  Atlanticare I, 439 Mass. at 6-7.  We further stated that this interpretation of the statute "would be entirely unremarkable were it not for [MassHealth's] view, agreed to by the hospitals, that it cannot recover costs from the liable third party when that party is Medicare."  Id. at 11. This court explicitly rejected that view, as we were "not persuaded that it is impossible for [MassHealth] to obtain reimbursement from Medicare."  Id.

ii.  Post-Atlanticare I developments.  A few weeks after this court released its decision in Atlanticare I, CMS issued a letter from the State Medicaid director clarifying CMS's policy as to the recovery of Medicaid payments for individuals who

become retroactive dual eligibles. The letter indicated that, as a general matter, where Medicaid learns of a liable third party after a claim is paid, or where retroactive benefits become available after a claim is paid, State Medicaid agencies "must seek recovery from that third party." The letter went on to explain, however, that where the liable third party is Medicare, neither the Federal statutory scheme nor Federal regulations prohibit a State Medicaid agency from recovering its payment directly from the provider. The defendant promptly filed a petition for rehearing with this court in May 2003, citing to the April 2003 letter from CMS. The petition was denied without further comment.

CMS sent a letter dated December 30, 2003, to MassHealth in response to questions that MassHealth had posed to the agency. The letter explained CMS's position that the statute does require the State to seek recovery from the liable third party, but that where the liable third party is Medicare "there is no statutory authority under Medicare to allow a [S]tate to seek recovery and be paid directly from Medicare." In such instances, CMS wrote, "the [S]tate may timely request the provider to submit a bill timely to Medicare."

MassHealth filed an emergency motion to modify the declaratory judgment, in light of the April 2003 and December 2003 letters from CMS, arguing that they constituted changed

circumstances warranting a modification of the declaratory judgment, pursuant to Mass. R. Civ. P. 60 (b) (5), 365 Mass. 828 (1974).[6] The Superior Court judge denied the motion, concluding that none of the arguments advanced by the defendant "establishes to this [c]ourt's satisfaction that there is no possible way for [MassHealth] to recover from Medicare." The judge also concluded that MassHealth's proposed modification to the declaratory judgment was not suitably tailored to the changed circumstance, because it "does not resolve the problem," but simply shifts the administrative costs from MassHealth onto the providers.

In July 2004, a declaratory judgment was entered in the Superior Court after rescript which provided in relevant part:

> "It is further DECLARED that [MassHealth] lacks the authority to implement 130 Code Mass. Regs. § 450.316(E) [now renumbered § 450.316(F)] to the extent that the regulation, by requiring hospitals to refund Medicaid payments to [MassHealth] after the hospitals have complied

---

[6] Rule 60 provides in relevant part:

"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: . . . (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application . . . . The motion shall be made within a reasonable time . . . . A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation."

Mass. R. Civ. P. 60 (b), 365 Mass. 828 (1974).

with [MassHealth]'s due diligence regulation (130 Code Mass. Regs. § 450.316) and received payment for their services from [MassHealth] and [MassHealth] subsequently learns that a third-party insurer (including Medicare) is responsible for payment for all or part of the hospital's services, is inconsistent with the Supreme Judicial Court's interpretation of 42 U.S.C. § 1396a(a)(25)(B)."

iii. First Circuit decision. Subsequent to these proceedings, MassHealth attempted to recover reimbursements for retroactive dual eligibles directly from Medicare. See Sebelius, 638 F.3d at 25. CMS refused to reimburse MassHealth, however, maintaining its position that MassHealth must seek such reimbursements from providers, not Medicare. Id. The Commonwealth brought suit in Federal court. See id. A judge in the Federal District Court for the District of Massachusetts ruled that the Medicare statute prohibited MassHealth from recovering reimbursements directly from CMS. Id.

On appeal, the First Circuit affirmed the District Court's ruling. In so doing, it emphasized that the Medicare statute required that a Medicare "payment for services furnished an individual may be made only to providers of services." Id. at 31, quoting 42 U.S.C. § 1395f(a). Although recognizing that the statute was not explicit on "whether the Commonwealth, which is not a provider, may recover reimbursement directly from Medicare in cases of retroactive dual eligibility," the First Circuit concluded that "[i]n this statutory context, it is most natural to read reimbursement as a particular type of payment."

Sebelius, 638 F.3d at 31, 32. As "[t]he Medicare statute equates reimbursement and payment and does not allow non-providers to receive payments from Medicare," the Commonwealth could not recover directly from Medicare. Id. at 31. The First Circuit further noted that the Commonwealth "is not included among any of the express allowances in the Medicare statute for non-providers to receive payments." Id.

The First Circuit also provided an "alternative holding" that CMS's interpretation of its regulations as prohibiting direct reimbursement to State Medicaid agencies was entitled to deference. Sebelius, 638 F.3d at 33. In this regard, the First Circuit had a much more expansive record of the agency's interpretation than was presented to this court, including the letter dated December 2003, which stated that "there is no statutory authority under Medicare to allow a State to seek recovery and be paid directly from Medicare," as well as a letter from CMS to the Commonwealth dated June 2005 that reiterated that "there is no statutory authority for reimbursing Medicaid directly for services rendered to Medicare beneficiaries." Id. at 34.

Given the statutory language and CMS's regulatory guidance, the First Circuit determined that the Commonwealth could not seek direct reimbursement from Medicare but would instead need to utilize another means of recovery. The First Circuit

determined that the Commonwealth could nonetheless recover reimbursements "by asking providers to return [S]tate Medicaid funds," as the Federal statutory scheme did not preclude MassHealth from doing so.  Id. at 32.  This procedure, known as demand billing, was apparently raised by CMS as a viable alternative to direct reimbursement from Medicare.  See id. at 34.  The First Circuit also considered "CMS bound by its representation as to the mechanisms available for the Commonwealth to seek and recover reimbursement."  Id. at 36.

In the wake of the First Circuit's decision, MassHealth began using demand billing to address the issue of retroactive dual eligibles.  As discussed, under this method of recovery, MassHealth requests that the provider submit a bill to Medicare and repay MassHealth once Medicare has paid the provider.  According to MassHealth, this solution works, but only to a point.  Because Medicare requires that providers submit claims within twelve months of the date of service, MassHealth asserts that it cannot rely on demand billing where a Medicaid recipient becomes retroactively eligible for Medicare more than twelve months after the day of service, unless the State first voids the Medicaid payment.

iv.  Amendment of Medicare regulation.  A few months before the First Circuit issued its decision, a Federal Medicare regulation pertaining to the deadline for filing certain

Medicare claims was amended, effective January 1, 2011.[7] The amendment followed the passage of the Affordable Care Act, which had altered Medicare filing deadlines.[8] See Pub. L. No. 111-148,

---

[7] The regulation applies to both services furnished under Part A of Medicare as well as services furnished under Part B, where applicable. See 75 Fed. Reg. 73170, 73450 (Nov. 29, 2010). See Briggs v. Commonwealth, 429 Mass. 241, 243 (1999) ("Medicare Part A essentially covers hospital, post-hospital, and other inpatient services, and coverage is automatic. . . . Medicare Part B is a supplemental, voluntary insurance program providing coverage for physician and outpatient services" [citation and footnote omitted]).

[8] In their entirety, the two filing exceptions under 42 C.F.R. § 424.44(b)(2)-(b)(3) (2019) provide:

"(2) The time for filing a claim will be extended if CMS or one of its contractors determines that a failure to meet the deadline in paragraph (a) of this section is caused by all of the following conditions:

"(i) At the time the service was furnished the beneficiary was not entitled to Medicare.

"(ii) The beneficiary subsequently received notification of Medicare entitlement effective retroactively to or before the date of the furnished service.

"(3) The time for filing a claim will be extended if CMS or one of its contractors determines that a failure to meet the deadline in paragraph (a) of this section is caused by all of the following conditions:

"(i) At the time the service was furnished the beneficiary was not entitled to Medicare.

"(ii) The beneficiary subsequently received notification of Medicare entitlement effective retroactively to or before the date of the furnished service.

§ 6404(a)(1), 124 Stat. 767 (2010). The regulatory amendments allowed for new exceptions to the Medicare filing deadline in light of these statutory changes.

The first exception provides that the filing deadline will be extended if the failure to meet the deadline is due to the fact that: "(i) [a]t the time the service was furnished the beneficiary was not entitled to Medicare;" and "(ii) [t]he beneficiary subsequently received notification of Medicare entitlement effective retroactively to or before the date of the furnished service." 42 C.F.R. § 424.44(b)(2). In such

---

"(iii) A State Medicaid agency recovered the Medicaid payment for the furnished service from a provider or supplier 6 months or more after the service was furnished."

The extensions afforded to each exception are as follows:

"(ii) If CMS or one of its contractors determines that both of the conditions are met in paragraph (b)(2) of this section but that all of the conditions in paragraph (b)(3) are not satisfied, the time to file a claim will be extended through the last day of the sixth calendar month following the month in which either the beneficiary or the provider or supplier received notification of Medicare entitlement effective retroactively to or before the date of the furnished service.

"(iii) If CMS or one of its contractors determines that all of the conditions are met in paragraph (b)(3) of this section, the time to file a claim will be extended through the last day of the sixth calendar month following the month in which the State Medicaid agency recovered the Medicaid payment for the furnished service from the provider or supplier."

42 C.F.R. § 424.44(b)(5).

instances, the filing deadline will be extended six months from the date that the beneficiary or provider is notified of retroactive Medicare entitlement. 42 C.F.R. § 424.44(b)(5)(ii).

The second exception provides that the filing deadline will be extended if the failure to meet the deadline is due to the above two conditions, along with a third condition: that the "State Medicaid agency recovered the Medicaid payment for the furnished service from a provider or supplier [six] months or more after the service was furnished" (emphasis added). 42 C.F.R. § 424.44(b)(3). In such instances, the filing deadline will be extended six months from the date "in which the State Medicaid agency recovered the Medicaid payment for the furnished service from the provider or supplier" (emphasis added). 42 C.F.R. § 424.44(b)(5)(iii). The reference to providers in 42 C.F.R. § 424.44(b)(3) explicitly contemplates that State Medicaid agencies will recover a payment from a health care provider where an individual becomes retroactively dual eligible for Medicaid and Medicare. This particular exception to the filing deadline is designed to allow for providers to recover from Medicare in such instances, where their claim would otherwise be barred by the passage of time. The Commonwealth contends that our ruling in Atlanticare I, which requires MassHealth to seek reimbursement directly from Medicare, not the provider, precludes the use of this procedure.

v. _Proceedings leading to the instant appeal_. On September 28, 2018, the defendant filed a motion for relief from the judgment in light of the First Circuit's decision and the regulatory amendment to 42 C.F.R. § 424.44. The motion was denied. The defendant appealed, and we granted the defendant's application for direct appellate review.

MassHealth seeks a modification of the declaratory judgment such that it may seek reimbursements from providers, rather than continuing to seek reimbursements directly from Medicare and other liable third parties.[9] The agency estimates that it is unable to recover approximately $5.3 million per year in claims that should have been paid out by Medicare once a recipient's retroactive dual eligibility became known. MassHealth also has indicated that it is unaware of any State that faces the same prohibition on recovering Medicaid payments directly from providers.[10]

---

[9] Although MassHealth requests the ability to seek reimbursement from providers as a general matter, MassHealth contends that such a modification of the judgment would have "little, if any" impact on providers where the third-party insurer is not Medicare. This is because MassHealth already has a direct right of recovery against non-Medicare insurers under G. L. c. 118E, § 22, and MassHealth contends that it has a general practice of seeking payment directly from the private insurers themselves, rather than from providers.

[10] CMS apparently represented to the First Circuit that the "standard procedure across the country" for recovering reimbursements from Medicare is to employ demand billing.

The agency contends that, in light of the First Circuit's ruling, it has been placed in an untenable position of attempting to follow two contradictory holdings:  this court's ruling in Atlanticare I that MassHealth must seek reimbursements directly from liable third parties, and the First Circuit's ruling that MassHealth is prohibited from seeking reimbursements directly from Medicare.

2.  Discussion.  a.  Standard of review.  The defendant seeks a modification of the declaratory judgment pursuant to Mass. R. Civ. P. 60 (b) (5).  Rule 60 (b) (5) allows the court to relieve a party from a final judgment where "a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have

_____

Sebelius, 638 F.3d at 36 n.13.  By contrast, MassHealth asserts that it is aware of nine other States that seek reimbursement directly from the provider where Medicare is the retroactively liable third party:  Maine, Vermont, California, Ohio, Pennsylvania, Alabama, Wyoming, Michigan, and Minnesota. MassHealth has further indicated that it is unaware of any State that requires its State Medicaid agency to seek reimbursements from Medicare directly.

It would appear, however, that a few States do in fact require their State Medicaid agency to pursue Medicare directly. See Tex. Government Code § 531.0392 (b) (2020) ("The commission shall obtain Medicaid reimbursement from each fiscal intermediary who makes a payment to a service provider on behalf of the Medicare program").  See also South Dakota Admin. Rules § 22:02:02:10 (2020) ("[A] county must pursue the availability of a third-party payment source . . . such as Medicare"). Exactly how that is done is not clear from the record or the regulatory language.

prospective application." As the 1973 Reporter's Notes indicate, Rule 60 (b) (5) is designed to allow "relief from a judgment which was valid and equitable when rendered but whose prospective application has, because of changed conditions, become inequitable." Reporters' Notes (1973) to Rule 60, Mass. Ann. Laws Court Rules, Rules of Civil Procedure (LexisNexis 2019). The rule "derives from the traditional power of a court of equity to modify its decree in light of changed circumstances." Mitchell v. Mitchell, 62 Mass. App. Ct. 769, 778 (2005). The moving party thus bears the burden of demonstrating a "significant change in circumstances warranting revision" of the judgment (quotations and citation omitted). Great Woods, Inc. v. Clemmey, 89 Mass. App. Ct. 788, 795 (2016). See MacDonald v. Caruso, 467 Mass. 382, 388-389 (2014). One example of such changed circumstances would be a "later change in the law[,] such as when a statute is amended." Clean Harbors of Braintree, Inc. v. Board of Health of Braintree, 415 Mass. 876, 884-885 (1993). See Horne v. Flores, 557 U.S. 433, 447-448 (2009) (under Federal analog, changed circumstances, such as "changes in governing law or its interpretation by the courts," may "warrant reexamination of the original judgment").

The resolution of motions for relief from judgment "rests in the discretion of the trial judge." Wojcicki v. Caragher, 447 Mass. 200, 209 (2006). Accordingly, the "denial of a motion

under Rule 60 (b) will be set aside only on a clear showing of an abuse of discretion." Murphy v. Administrator of the Div. of Personnel Admin., 377 Mass. 217, 227 (1979).

b. Timing of motion. As a threshold matter, the plaintiffs contend that the defendant's motion is untimely. The plaintiffs note that both changed circumstances cited by MassHealth -- the amendment to 42 C.F.R. § 424.44 and the First Circuit's ruling -- occurred in 2011, seven years before MassHealth sought modification of the judgment. The motion judge observed that MassHealth "has offered no reason for having waited seven plus years to bring the instant [m]otion," but did not go so far as to conclude that the motion was untimely.

A motion under Mass. R. Civ. P. 60 (b) (4)-(6) must be made "within a reasonable time," which is to be determined in light of all of the circumstances of the case. Such determinations, however, are "addressed solely to the judge's discretion." Chavoor v. Lewis, 383 Mass. 801, 805 n.4 (1981). "In determining whether a motion was filed within a reasonable time, a judge may consider the reasons for delay; the ability of the movant to learn of the grounds earlier; prejudice to the parties, if any; and the important interest of finality." Owens v. Mukendi, 448 Mass. 66, 74 (2006).

There is no set formula for determining what constitutes a "reasonable time" for the purposes of Mass. R. Civ. P. 60 (b)

(4)-(6). It is indisputable that a significant period of time elapsed between the First Circuit's ruling and the filing of the Rule 60 motion in this case -- indeed a much longer span of time than we have deemed unreasonable in other cases. See Owens, 448 Mass. at 76-77 and cases cited (delays of two or three years found to be unreasonable). We consider this delay troubling to say the least, particularly given that MassHealth's justification for its failure to promptly seek modification of the judgment is somewhat murky. At oral arguments, MassHealth suggested that the passage of the Affordable Care Act in 2010 prompted a sea change in health care that required MassHealth to focus on more fundamental Medicaid issues, such as changes to eligibility requirements, and that this contributed to the lengthy delay in addressing the reimbursement issue. We understand that the delay also may be due in part to MassHealth's concern that it would be asking this court to reconsider one of its own decisions -- indeed a decision that was unanimous, and in which the court summarily denied a petition for reconsideration, even after further regulatory guidance from CMS.

More importantly, however, we recognize that clear resolution of this issue is critical, given the substantial amount of public funds at stake and the need to avoid conflicting interpretations by this court and the First Circuit

that would lead to confusion and administrative deadlock.  Cf. United States v. 119.67 Acres of Land, More or Less, Situated in Plaquemines Parish, State of La., 663 F.2d 1328, 1331 (5th Cir. 1981) (motion filed under Fed. R. Civ. P. 60(b)(6) should not be dismissed as untimely "[g]iven the significant governmental and public rights involved in this controversy").  Moreover, the risk of prejudice to the plaintiffs of delay is diminished by the fact that MassHealth is only seeking a prospective modification of the declaratory judgment.  In light of the important interests at stake, the need for clarity, and the diminished risk of prejudice to the plaintiffs, we conclude that the motion is not untimely in the highly unusual circumstances of this case.

c.  Existence of changed circumstances.  The judge below found that MassHealth had failed to demonstrate changed circumstances warranting modification of the declaratory judgment.  The judge observed that the relevant statutory provision at issue in Atlanticare I, 42 U.S.C. § 1396a(a)(25)(B), had not been amended since this court's ruling.  Additionally, the motion judge noted that this court was at least aware of the possibility that MassHealth might be unable to recover reimbursements directly from Medicare, but issued the Atlanticare I decision nonetheless.  Finally, the motion judge concluded that the reference to provider-based

reimbursement in 42 C.F.R. § 424.44 was too vague to constitute explicit recognition of a State Medicaid's agency ability to pursue reimbursement from a provider where the third-party insurer is Medicare.

To determine whether MassHealth has demonstrated a change in circumstances warranting a modification of the declaratory judgment, we first look to the circumstances as they existed at the time of our ruling in Atlanticare I. As discussed, in Atlanticare I, 439 Mass. at 11, this court rejected MassHealth's argument that it was not possible to seek reimbursements directly from Medicare. A number of reasons motivated this conclusion. First, we observed that neither party had identified a Federal regulation specifically applicable to instances "in which Medicare has acknowledged a mistake in denying liability for a claim or has agreed to pay a claim retroactively." Id. Second, we identified two Federal cases, New York State Dep't of Social Servs. v. Bowen, 846 F.2d 129 (2d Cir. 1988), and Michigan Dep't of Social Servs. v. Shalala, 859 F. Supp. 1113 (W.D. Mich. 1994), that "rejected the rationale underlying [MassHealth's] position." Atlanticare I, supra at 11-12. At the same time, MassHealth had "cited no case that supports the proposition that it cannot pursue reimbursement from Medicare in the circumstances of this case." Id. at 13. Third, we stated that while the HCFA had issued a letter in 1991

reflecting a "general position" that State Medicaid agencies could not recover from Medicare, we considered it "of no consequence that HCFA has not yet adopted the reasoning of another court to the contrary." Id. Fourth, we observed that "nothing in the record . . . suggest[s] that [MassHealth] has ever attempted to recover reimbursement from Medicare, or that it has been rebuffed in any attempts to do so." Id. And finally, both parties had conceded at oral arguments that "it might be possible for [MassHealth] to recover from Medicare." Id. at 11 n.14.

Although our reasoning was understandable at the time, postjudgment legal developments have altered the basis for each of the rationales cited. First, while the parties were unable to identify a Federal regulation that specifically addressed retroactive Medicare liability in the context of retroactive dual eligibles, the amended version of 42 C.F.R. § 424.44 now does so, albeit obliquely.[11] While § 424.44 pertains to the filing deadline for Medicare claims, rather than the ability to pay out funds to State Medicaid agencies, it explicitly

---

[11] The oblique nature of the reference is unsurprising, given that Medicare, much like Medicaid, is an incredibly complicated statutory scheme. See Schweiker v. Gray Panthers, 453 U.S. 34, 43 (1981). The law that established both programs is known for its "Byzantine construction," id., which makes it "almost unintelligible to the uninitiated." Id., quoting Friedman v. Berger, 547 F.2d 724, 727 n.7 (2d Cir. 1976), cert. denied, 430 U.S. 984 (1977).

contemplates that State Medicaid agencies will seek reimbursement from providers, and providers will seek payment from Medicare. See Tarin v. Commissioner of the Div. of Med. Assistance, 424 Mass. 743, 751 (1997) (Federal Medicaid regulations entitled to substantial deference). CMS's Medicare claims processing manual, dated January 21, 2011, similarly makes reference to a State Medicaid agency "recoup[ing] the money it paid the provider or supplier." The April 2003 letter issued by CMS less than a month after our holding in Atlanticare I further reiterates that neither the Federal statutory scheme nor Federal regulations prohibit a State Medicaid agency from recovering its payment directly from the provider where the liable third party is Medicare. Even more explicit, however, is CMS's December 2003 letter to MassHealth, which states that "there is no statutory authority under Medicare to allow a [S]tate to seek recovery and be paid directly from Medicare." In such instances, CMS stated, "the [S]tate may timely request the provider to submit a bill timely to Medicare." A June 2005 letter further confirmed that "there is no statutory authority for reimbursing Medicaid directly for services rendered to Medicare beneficiaries." Sebelius, 638 F.3d at 34.

As to the two cases we cited in support of MassHealth's ability to directly seek reimbursement from Medicare, subsequent developments in the case law constitute a clear change in

circumstances from Atlanticare I.  In New York State Dep't of Social Servs., 846 F.2d at 130, upon which this court relied in Atlanticare I, the United States Court of Appeals for the Second Circuit held that the State Medicaid agency had standing to appeal from the denial of nursing home patients' Medicare claims.  We cited that case as suggestive of a State Medicaid agency's authority to seek reimbursement directly from Medicare. Atlanticare I, 439 Mass. at 11.  More recently, however, in the context of Medicare claims for home health care services, the Second Circuit deferred to CMS's position that such claims must be filed by providers, not Medicare beneficiaries or State Medicaid agencies.  Leavitt, 428 F.3d at 146.  See also Charlotte-Mecklenburg Hosp. Auth. v. North Carolina Dep't of Health & Human Servs., 201 N.C. App. 70, 77 (2009) ("only providers of services can submit Medicare reimbursement claims on behalf of Medicaid recipients later determined to be eligible for Medicare").  In so holding, the Second Circuit concluded that State Medicaid agencies could obtain reimbursements from providers using demand billing.  See Leavitt, supra at 149.

Of course, the most obvious, significant change in the case law since Atlanticare I is that the First Circuit has now definitively stated that MassHealth may not seek reimbursement directly from Medicare.  Notably, although CMS's predecessor, HCFA, was not a party to Atlanticare I and did not submit an

amicus brief to the court, CMS was a party to the First Circuit litigation and was able to outline the agency's position unequivocally. It is clear from the Sebelius litigation that CMS takes the position that State Medicaid agencies may not pursue reimbursement directly from Medicare.

Finally, the record before us is now clear that MassHealth has attempted to recover from Medicare directly and has been unable to do so. Initially, this was only because CMS took a stance that Medicare could not pay out funds to MassHealth, but CMS's view has now also been endorsed by the First Circuit. In sum, post-Atlanticare I changes to the Federal law have made clear what remained ambiguous at the time of our prior decision -- that it is not possible for MassHealth to recover from Medicare directly.

Despite these significant developments in the years since Atlanticare I, the plaintiffs reiterate that the language of 42 U.S.C. § 1396a(a)(25)(B) has not changed, and the Federal Medicaid regulations in place at the time were adequate to indicate that direct recovery was not going to be possible. For the reasons discussed supra, however, we consider the law to have changed significantly, or at least to have been significantly clarified, since our original decision.

The plaintiffs also rely on our previous discussion of the cost-benefit analysis requirement in Atlanticare I, arguing that

this requirement would serve little purpose if State Medicaid agencies were allowed to seek reimbursement from providers, rather than from liable third parties.  The statute premises reimbursement on a finding that "the amount of reimbursement the State can reasonably expect to recover exceeds the costs of such recovery."  42 U.S.C. § 1396a(a)(25)(B).  As we observed in passing in Atlanticare I, if a State Medicaid agency is able to seek reimbursement from a provider, "realistically, there are few instances in which the cost of such recovery would exceed the amount of the recovery."  Atlanticare I, 439 Mass. at 7. Thus, we reasoned, if Congress intended to allow State Medicaid agencies to seek reimbursement from providers, this provision would be rendered "largely superfluous," as the cost-benefit analysis would reliably weigh in favor of seeking reimbursement. Id.

Although the regulations are less than clear about which party's costs need to be considered, we recognize that MassHealth would be unlikely to consider reimbursement not cost effective if it could simply shift the costs of recovery to the providers.  With that consideration in mind, however, and after reviewing the regulations, we conclude that the costs to providers may and should be given consideration.

The regulations indicate that seeking reimbursement is considered cost effective where "the amount [the State Medicaid

agency] reasonably expects to recover will be greater than the cost of recovery." 42 C.F.R. § 433.139(f)(1). The regulations do not, however, define the scope of what fairly may be considered in calculating the "cost of recovery." Further, where a State requests a waiver of the sixty-day deadline for seeking reimbursement due to lack of cost effectiveness, see note 4, supra, the regulation explains that providing adequate documentation of such would include "costs associated with billing, claims recovery data, and a State analysis documenting a cost-effective alternative." 42 C.F.R. § 433.139(e)(1)(ii). Albeit that these examples are in reference to requesting a waiver of the sixty-day deadline, we find these examples also to be illustrative of the kinds of information that may be considered in conducting a cost-benefit analysis for the purpose of seeking reimbursement; and two of the three examples provided easily could pertain to the costs associated with providers. Thus, we conclude that when MassHealth seeks to recover payments made to providers and require them to seek reimbursement from Medicare, any associated costs to providers of doing so may be properly considered.

That being said, this factor does not change our analysis in this case. In the original administrative proceedings from which this case originates, testimony was heard as to the nature of the burden placed on providers who had been tasked with

chasing after third parties for payment. No evidence has been included in the record presently before this court as to the administrative cost that would be placed on providers of pursuing Medicare, or the extent to which such costs would be offset by the increased compensation rate from Medicare. Moreover, it is unclear to what extent the costs of recovery may be substantially alleviated by the use of computerized recordkeeping and data storage, something that is much more widespread now than at the time of our original decision.

In sum, given subsequent developments in the Federal law -- primarily, the additional administrative guidance from CMS, the First Circuit's ruling in Sebelius, and the amendments to 42 C.F.R. § 424.44 -- we conclude that it was an abuse of discretion to find that MassHealth had failed to show a change in circumstances since Atlanticare I. Medicaid is designed to be a payer of last resort, and it would be "illogical to suggest . . . that the statutory and regulatory scheme of Medicare abrogates" this principle. New York Dep't of Social Servs., 846 F.2d at 134. Because MassHealth cannot recover reimbursements directly from Medicare, the best way to harmonize these statutory schemes is to conclude that while State Medicaid agencies are generally expected to seek reimbursements directly from liable third parties, the State agency may instead seek reimbursement from the provider if the liable third party is

Medicare.  Cf. Leavitt, 428 F.3d at 146 (deference to agency interpretation particularly warranted where it provides "reasonable resolution of an apparent conflict" between two Federal regulations).

d.  Modification of judgment.  Separate and apart from the issue of changed circumstances, the motion judge also concluded that the agency's proposed modification of the judgment was not "suitably tailored" to any such change in circumstances.[12]  The judge observed that while MassHealth relied on Medicare-related developments to justify its request for modification, MassHealth nonetheless sought a wholesale reversal of Atlanticare I as it pertained to all liable third parties.

We agree that MassHealth's proposed modification sweeps too broadly.  In its motion, MassHealth requests modification of the judgment "so that MassHealth may resume enforcing a regulation (now codified at 130 [Code Mass. Regs.] § 450.316(F)) in order

---

[12] The motion judge's reference to "suitable tailoring" derives from jurisprudence concerning the Federal analog to Mass. R. Civ. P. 60.  See Rufo v. Inmates of Suffolk County Jail, 502 U.S. 367, 391 (1992).  The parties adopt this standard in their briefing as well.  Under Fed. R. Civ. P. 60, once a moving party has satisfied its burden of demonstrating changed circumstances, the court must "determine whether the proposed modification is suitably tailored to the changed circumstance." Rufo, supra at 391.  We have cited to Rufo in the context of discussing Mass. R. Civ. P. 60, but we have never explicitly adopted a "suitable tailoring" requirement.  See MacDonald v. Caruso, 467 Mass. 382, 388 (2014).  For the purposes of this decision, we assume, without deciding, that suitable tailoring is required under our rule as well.

to pursue reimbursement from a previously-paid provider when a third party entity becomes retroactively liable."  Yet enforcement of the regulation as written would apply to all post-payment third-party reimbursements, not just those sought from Medicare.  As discussed supra, the changed circumstances that warrant a modification of the judgment pertain specifically to retroactive Medicare liability, not all third-party liability.  MassHealth has further failed to provide a rationale for modifying the judgment beyond its applicability to Medicare reimbursements.  Indeed, in its reply brief, MassHealth indicates that this is a nonissue for other third parties because MassHealth already has a direct right of recovery against non-Medicare insurers under G. L. c. 118E, § 22, and MassHealth has a general practice of seeking payment of liabilities due to third-party insurance coverage directly from the insurers themselves, rather than from providers.

To determine the appropriate scope of modification of the judgment, we therefore examine the practical impact of the changed circumstances on the administrability of the final judgment.  In the wake of the First Circuit's ruling, MassHealth cannot recover reimbursements directly from Medicare for services provided to retroactive dual eligibles.  MassHealth currently utilizes demand billing instead -- a process by which MassHealth requests that the provider submit a bill to Medicare

and repay MassHealth once Medicare has paid the provider. MassHealth asserts that this solution does not permit MassHealth to pursue reimbursements where retroactive Medicare eligibility is discovered more than twelve months after the service was performed, in light of Medicare's twelve-month filing deadline. MassHealth notes that the Medicare filing deadline exception outlined in 42 C.F.R. § 424.44(b)(3), which is designed to address reimbursements to State Medicaid agencies, is contingent upon the State first voiding the Medicaid payment.[13]

---

[13] Neither party addresses the Medicare filing deadline exception contained within 42 C.F.R. § 424.44(b)(2). This exception is not contingent upon the voiding of the Medicaid payment, unlike the exception provided by 42 C.F.R. § 424.44(b)(3), and triggers a six-month extension of the filing deadline from the date that the beneficiary or provider was notified of Medicare entitlement. Indeed, CMS explicitly declined to "create an additional exception [to the regulation] to permit providers and suppliers to submit claims for services at the request of a Medicaid State Agency prior to the State Medicaid Agency actually recovering the payment," because CMS believed the exception under 42 C.F.R. § 424.44(b)(2) was sufficient to account for such instances. 75 Fed. Reg. 73448-73449 (Nov. 29, 2010). Title 42 C.F.R. § 424.44(b)(2) does not, however, provide as favorable of a filing deadline extension as 42 C.F.R. § 424.44(b)(3). This is because the six-month extension provided by 42 C.F.R. § 424.44(b)(2) commences as soon as the provider or beneficiary is notified of Medicare eligibility, while the six-month extension provided by 42 C.F.R. § 424.44(b)(3) does not commence until MassHealth recovers the payment.

We also note that neither party addressed the relevance of a Federal regulatory provision that appears to have contemplated that State Medicaid agencies would pursue a waiver of the sixty-day deadline for seeking reimbursement where the liable third party is Medicare:

We conclude that changed circumstances justify the elimination of the restrictions imposed by Atlanticare I that declared that MassHealth does not have the authority to require that health care providers return payment to MassHealth in the event that Medicare is later identified as a liable third party. Those restrictions were imposed based on the incorrect assumption that MassHealth could and should pursue reimbursement directly from Medicare. Given that MassHealth cannot pursue Medicare directly, and the permissible length of time for seeking reimbursements may be conditioned on whether MassHealth sought and received reimbursement from providers, see 42 C.F.R. § 433.139(d)(2), we conclude that it is appropriate to modify the declaratory judgment to allow MassHealth to require reimbursement from providers where a health care service was rendered to an individual who retroactively became eligible for Medicare.

As mentioned previously, the original declaratory judgment entered in this case provided as follows:

---

"An agency requesting a waiver of the requirements specifically concerning either the [sixty]-day limit in paragraph (d)(1) or (d)(2) of this section must submit documentation of written agreement between the agency and the third party, including Medicare fiscal intermediaries and carriers, that extension of the billing requirement is agreeable to all parties."

42 C.F.R. § 433.139(e)(4).

> "It is further DECLARED that [MassHealth] lacks the authority to implement 130 Code Mass. Regs. § 450.316(E) [now renumbered § 450.316(F)] to the extent that the regulation, by requiring hospitals to refund Medicaid payments to [MassHealth] after the hospitals have complied with [MassHealth]'s due diligence regulation (130 Code Mass. Regs. § 450.316) and received payment for their services from [MassHealth] and [MassHealth] subsequently learns that a third-party insurer (including Medicare) is responsible for payment for all or part of the hospital's services, is inconsistent with the Supreme Judicial Court's interpretation of 42 U.S.C. § 1396a(a)(25)(B)."

The declaratory judgment is to be modified so as to excise the parenthetical "(including Medicare)" and to append the following statement to the end of the declaration:  "Notwithstanding the above, MassHealth retains the authority to implement 130 Code Mass. Regs. § 450.316(E) [now renumbered § 450.316(F)] if the third-party insurer is identified as Medicare.  In accordance with § 450.316(F), MassHealth may require a provider to reimburse MassHealth where a health care service was rendered to an individual who later became retroactively eligible for Medicare.  The provider must then bill Medicare before resubmitting a claim to MassHealth."  This modification shall be prospective only, applicable to reimbursements sought for services performed subsequent to the date of this decision.

3. <u>Conclusion</u>.  For the foregoing reasons, we conclude that changed circumstances require modification of the declaratory judgment entered pursuant to our holding in <u>Atlanticare I</u>.  Accordingly, we order that this case be remanded

to the Superior Court for modification of the judgment in accordance with this opinion.

<u>So ordered</u>.